James T. Derfler (SBN 180367)
WALSH MCKEAN FURCOLO LLP
550 West C Street, Suite 950
San Diego, CA  92101-8569
Telephone: (619) 232-8486
Facsimile: (619) 232-2691
jderfler@wmfllp.com

Attorneys for Plaintiff
ADMIRAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT – EASTERN DIVISION

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, a Delaware corporation,<br><br>     Plaintiff,<br><br>     v.<br><br>FUSION PACIFIC, INC., a California corporation,<br><br>     Defendant. | **CASE NO.**<br><br>**COMPLAINT FOR:**<br>1. **DECLARATORY JUDGMENT – DUTY TO DEFEND**<br>2. **DECLARATORY JUDGMENT – DUTY TO INDEMNIFY**<br>3. **EQUITABLE REIMBURSEMENT – DEFENSE FEES & COSTS**<br>4. **DECLARATORY JUDGMENT – EQUITABLE REIMBURSEMENT – DEFENSE FEES & COSTS**<br>5. **DECLARATORY JUDGMENT – EQUITABLE REIMBURSEMENT – INDEMNITY - PAYMENT** |

Plaintiff Admiral Insurance Company (Admiral) alleges:

## PARTIES

1.     Admiral is, and at all times mentioned herein was, a Delaware

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

corporation with its principal place of business located in Scottsdale, Arizona.

2.     Admiral is informed and alleges that defendant Fusion Pacific, Inc. (FPI) is, and at all times mentioned herein was, a California corporation with its principal place of business in San Bernardino County.

## JURISDICTION & VENUE

3.     This court has jurisdiction over this action pursuant to 28 U.S.C. sections 1332(a) and 2201(a) because there is diversity between the parties and the amount in controversy exceeds $75,000.00 exclusive of costs and interests.

4.     Venue is proper in the Central District in that defendant FPI is domiciled in San Bernardino County, CA.

## NATURE OF DISPUTE

5.     The present action arises out of an insurance dispute between the parties.

6.     FPI was sued in three underlying actions for injuries allegedly caused by exposure to *legionella* bacterium.  In two of the underlying actions, the plaintiffs allege they contracted Legionnaire's disease caused by contaminated water in FPI's spa and hot-tub exhibits at the East Texas State Fair in Smith County, Texas in September 2019.  The third underlying action is a wrongful-death claim, the death of which was allegedly caused by the decedent contracting Legionnaire's disease from FPI's spa and hot-tub exhibits at the fair.

7.     The coverage dispute between the parties involves the sole issue of whether the claims and damages alleged in the underlying actions are excluded from coverage by a microorganism exclusion attached to the Admiral policies.

## THE ADMIRAL POLICIES

### A.     PRIMARY POLICY

8.     Admiral issued a commercial general liability (CGL) policy (policy number CA000025982-03) to FPI and Inca Plastics Molding Co., Inc. (IPMC) dba Eco Spas with FPI and IPMC, each designated as a named insured, effective

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

2
COMPLAINT FOR DECLARATORY JUDGMENT

December 21, 2018 - December 21, 2019.  (A copy of the Admiral CGL policy is attached as Exhibit A.)  The policy contains a per-occurrence limit of $1 million, products/completed operations and general aggregate limits of $2 million, and a personal-and-advertising injury limit of $1 million.

9.     Attached to the Admiral CGL policy is form CG 00 01 04 13 entitled **Commercial General Liability Coverage Form**.  Form CG 00 01 04 13 states in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . .

. . .

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**     The "bodily injury" or "property damage" occurs during the policy period . . .

. . .

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

**b.**     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

10.     Form CG 00 01 04 13 contains the following pertinent definitions:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Property damage" means:

a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;

b.     Malicious prosecution;

c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room,

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.    The use of another's advertising idea in your "advertisement"; or

g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:

a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

11.    "Bodily injury" is defined by endorsement in form AD 08 42 02 16 entitled **Bodily Injury Redefined** attached to the Admiral CGL policy.  The form states in pertinent part:

The definition of "bodily injury" in DEFINITIONS is amended as follows:

"Bodily injury" means physical injury, physical sickness or physical disease sustained by any one person, including death resulting from any of these at any time. "Bodily injury" does not include shock or emotional, mental or psychological distress, injury, trauma or anguish, or other similar condition, unless such condition results solely and directly from that one person's prior physical injury, physical sickness or physical disease otherwise covered under this insurance.

12.    Attached to the Admiral CGL policy is form AD 68 83 04 13 entitled **Long Term Exposure Exclusions – Joint Form**.  Form AD 68 83 04 13 includes

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

COMPLAINT FOR DECLARATORY JUDGMENT

the **Microorganisms, Biological Organisms Or Organic Contaminants Exclusion (General Liability Broad Form)** (microorganism exclusion), which states:

This insurance does not apply to:

    (1)    Liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or " personal and advertising injury", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust, or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion; or

    (2)    Any loss, cost or expense arising out of any:

        (a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

        (b)    Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold,

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

COMPLAINT FOR DECLARATORY JUDGMENT

mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal injury and advertising injury" to which this endorsement applies.

**B.**   **EXCESS POLICY**

13.   Admiral issued an excess policy (policy number GX000000241-03) to FPI and IPMC dba Eco Spas with FPI and IPMC each designated as a named insured for the period December 21, 2018 - December 21, 2019.  (A copy of the Admiral excess policy is attached as Exhibit B.)  The policy contains loss-event and policy-aggregate limits of $4 million.

14.   Attached to the Admiral excess policy is form EX 46 41 04 16 entitled **Commercial Excess Liability Coverage Form**.  Form EX 46 41 04 16 states in pertinent part:

**SECTION I - EXCESS LIABILITY COVERAGE**

**1.**   **Insuring Agreement**

a.   We will pay on behalf of the "insured" the "ultimate net loss" in excess of the "controlling underlying insurance limit" because of "injury or damage" caused by a "loss event" to which this insurance applies, provided the applicable limits of "controlling underlying insurance", as shown in the Schedule Of Controlling Underlying Insurance, have been exhausted by payment of judgments, settlements and, if applicable, costs or expenses.

. . .

**2.**   **Insuring Agreement – Defense**

a.   We will have no duty to investigate or defend any claim

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

7

COMPLAINT FOR DECLARATORY JUDGMENT

or "suit". We will have the right and be given the opportunity to associate with any "insured" or "controlling underlying insurer" in the investigation, settlement or defense of any claim or "suit" that may involve this insurance.

. . .

**6.      Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this policy.  In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this policy.

. . .

15.      Form CG 00 01 04 13 contains the following pertinent definitions:

"Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Schedule Of Controlling Underlying Insurance that applies to the particular "loss event" for which a claim is made or "suit" is brought.

"Injury or damage" means any injury or damage covered by the applicable "controlling underlying insurance" arising from a "loss event".

"Loss event" means an occurrence, offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

"Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the "insured" becomes legally obligated to pay as damages by reason of:

a.      Settlements, judgments, binding arbitration; or

b.      Other binding alternate dispute resolution proceeding entered into with our consent.

"Ultimate net loss" includes costs and expenses if the "controlling underlying insurance" specifies that limits are reduced by costs or expenses.

/ / /

/ / /

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

1

## UNDERLYING ACTIONS

2

### *BROWN* ACTION

3

    16.    On November 10, 2020, Robert Brown filed a petition in the District

4

Court for Smith County, TX (Cause No. 20-2488-C) (hereinafter the "*Brown*

5

action").  On March 1, 2021, Brown filed a Second Amended Petition (*Brown*

6

petition).  (A copy of the *Brown* petition is attached as Exhibit C.)  FPI is named as

7

a defendant.

8

    17.    The *Brown* petition contains the following general allegations:

9

On or about September 27, 28, 29 and 30, 2019, Robert Brown

10

was a business invitee and entered upon the premises of the
East Texas State Fair in Smith County, Texas.  During the time

11

that Mr. Brown was upon Defendant's property Plaintiff
utilized was [sic] at and near the Fusion Pacific and Hard Cover

12

Hot Tub spa and hot tub displays that the facility offered

13

relevant hereto. . . (*Brown* petition at ¶ 9.)

14

. . . Upon information and belief, the *Legionella* bacteria that
were present in the water system were inhaled and ingested by

15

the Plaintiff.  (*Brown* petition at ¶ 10.)

16

On September 30, 2019, Robert Brown began to experience

17

symptoms consistent with Legionnaire's disease. . . He was
taken to the emergency room at Baylor Scott & White Spine

18

and Joint Hospital in Tyler, and diagnosed with pneumonia on

19

October 1, 2019. . . Mr. Brown made an appointment with Dr.
Alan F. Leifeste of Kingsland, TX 78639 who confirmed

20

Legionnaire's disease through a urine test.  (*Brown* petition at ¶

21

11.)

22

*Legionella* bacteria, which are the cause of Legionnaires'
disease, have an incubation period of 2 to 10 days within the

23

human body.  Mr. Brown's presence at The East Texas State

24

Fair is squarely within the incubation period of the bacteria and
their use of the water system, hot tubs and spas is consistent

25

with the likely cause of the disease.  (*Brown* petition at ¶ 12.)

26

Upon information and belief, Mr. Brown acquired

27

Legionnaire's disease at the property premises of The East
Texas State Fair in Smith County, Texas at 2112 W. Front

28

Street, Tyler TX 75702 from a Fusion Pacific and Hard Cover

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

9
COMPLAINT FOR DECLARATORY JUDGMENT

Hot Tub spa and hot tub display. . .  Legionnaire's disease was the direct and proximate cause of Robert Brown becoming seriously ill, requiring significant and continuing medical treatment.  (*Brown* petition at ¶ 13.)

18.   The *Brown* petition contains the following allegations under **Count I – Negligence**:

The Defendants breached their duty to Mr. Brown in the following respects when it knew or should have known that its acts and omissions created an unreasonable risk of harm to its invitees:

(a)   In failing to adequately inspect the premises and its systems for dangerous conditions including, but not limited to, the presence of *Legionella* bacteria;

(b)   In failing to adequately inspect, monitor, and maintain the water systems, hot tubs and spas when such inspection, monitoring, and maintenance would have discovered the presence of *Legionella*;

(c)   In failing to properly train and supervise its employees or those to whom it had entrusted the care and maintenance of the water systems, and in particular in failing to train or instruct them to recognize the presence of *Legionella* bacteria and the risks such bacteria present;

(d)   In failing to adopt, enact, employ, and enforce proper and adequate maintenance programs, precautions, procedures, measures, and plans for the detection of *Legionella* in its systems;

(e)   In failing to warn invitees of the presence of *Legionella*;

(f)   In failing to perform and furnish services, including testing and proper maintenance of the water systems, showers, hot tubs, spas, saunas and pools, in conformity with the standard of care then prevailing in the hospitality industry when such services would have disclosed the presence of *Legionella*;

(g)   In failing to have in force an inspection program of the water systems, hot tubs and spas when such an inspection program would have disclosed the presence of *Legionella* bacteria;

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

COMPLAINT FOR DECLARATORY JUDGMENT

(h)   In breaching its duty to provide a reasonably safe environment for its invitees; and

(i)   In failing to adequately treat its water systems, hot tubs, and spas with chlorine or other biocidal chemicals.

As a proximate cause of Defendants' breach of its duty to Plaintiff [sic] has sustained the serious injuries alleged above. . . (*Brown* petition at ¶ 17.)

19.   The *Brown* petition contains the following allegations under **Count II – Negligence** *Per Se*:

Defendants owed a legal duty to guests and visitors at the East Texas State Fair and the Fusion Pacific and Hard Cover Hot Tub displays, and specifically to the Plaintiff, to keep the water systems reasonably safe for the activities for which it was regularly used and reasonably foreseen to be used.  This duty extended to the water in the hot tubs and [sic] spas and displays.  Defendants breached their duty.  (*Brown* petition at ¶ 20.)

As a proximate cause of Defendants' breach of their duty to Plaintiff, Plaintiff has sustained the serious injuries alleged above.  Plaintiff therefore demands judgment against Defendants, jointly and severally, in an appropriate amount and requests that Plaintiff be awarded compensatory damages, as well as pre- and post-judgment interest, and such other relief as the law may allow.  (*Brown* petition at ¶ 21.)

## _MYER_ ACTION

20.   On June 21, 2021, Robert Myer filed a petition (*Myer* petition) in the District Court for Smith County, TX (Cause No. 21-1407-C) (hereinafter the "*Myer* action").  (A copy of the *Myer* petition is attached as Exhibit D.)  FPI is named as a defendant.

21.   The *Myer* petition includes the following general allegations:

On or about September 25, 2019, Plaintiffs, Robert Myer, and his wife, Erika, were attendees at the 2019 East Texas Fair . . . in Tyler, Texas.  (*Myer* petition at ¶ 11.)

Inside the Harvey Hall Convention Center were at least seven functioning hot tubs and spas are [sic] displayed, manufactured, operated, and/or maintained by Defendants, Fusion, Hard Cover, and Soft Fun.  (*Myer* petition at ¶ 13.)

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

11

COMPLAINT FOR DECLARATORY JUDGMENT

On or about October 4, 2019, Mr. Myer begins to feel sick. He is admitted to the UT Health Tyler Hospital in Tyler, Texas on October 10, 2019. He is treated for what was supposedly pneumonia and discharged from the hospital on October 13, 2019. (*Myer* petition at ¶ 17.)

On October 24, 2019, Mr. Myer was contacted by Northeast Texas Public Health District . . . and told that he actually contracted Legionnaires Disease. (*Myer* petition at ¶ 18.)

Subsequently, Mr. Myer underwent additional medical treatment for Legionnaires Disease and continues to suffer from the effects of that disease. (*Myer* petition at ¶ 19.)

During his visit to the Fair and the Harvey Hall Convention Center, Plaintiff, Robert Myer, was exposed to and breathed in, inhaled, or consumed *Legionella*-contaminated water, causing him to contract Legionnaires Disease. (*Myer* petition at ¶ 22.)

The source of the *Legionella*-contaminated water was Defendants Fusion, Hard Cover, and Soft Fun's hot tubs and spa displays, water supply, and the Harvey Hall Convention Center. (*Myer* petition at ¶ 23.)

The subsequent NET Health and CDC investigation confirmed the *Legionella* bacteria was present in the Harvey Hall Convention Center. (*Myer* petition at ¶ 25.)

The *Legionella* bacteria which Plaintiff, Robert Myer, was exposed to was on, or was contained, in the Fair's water. (*Myer* petition at ¶ 30.)

22.    The *Myer* petition contains the following allegations under **Count I – Negligence**:

The water supply and plumbing system at the Fair which Plaintiff, Robert Myer, was exposed to an unsafe and dangerous condition because it was contaminated with the *Legionella* bacteria. (*Myer* petition at ¶ 37.)

The hot tubs and spa displays at the Fair which Plaintiff, Robert Myer, was exposed to an unsafe and dangerous condition because it was contaminated with the *Legionella*-contaminated water. (*Myer* petition at ¶ 38.)

Defendants breached their duty to Plaintiffs, resulting in Plaintiff, Robert Myer, contracting Legionnaires disease. (*Myer* petition at ¶ 43.)

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

COMPLAINT FOR DECLARATORY JUDGMENT

Defendants' actions and omissions in allowing *Legionella* bacteria to thrive in the water and the hot tubs and spa displays at the Fair were a cause-in-fact of Plaintiff, Robert Myer, contracting Legionnaires disease. (*Myer* petition at ¶ 45.)

The Defendants breached their duty to Mr. Brown in the following respects when it knew or should have known that its acts and omissions created an unreasonable risk of harm to its invitees:

(a)   Failing to properly maintain the Fair's water supply and hot tubs and spa displays which allowed *Legionella* bacteria to develop and flourish;

(b)   Failing to clean and disinfect the Fair's water supply and hot tubs and spa displays which allowed *Legionella* bacteria to develop and flourish;

(c)   Failing to test, or have tested, the Fair's water supply and hot tubs and spa displays which allowed *Legionella* bacteria to develop and flourish;

(d)   Failing to inspect, or have inspected, the Fair's water supply and hot tubs and spa displays which allowed *Legionella* bacteria to develop and flourish;

(e)   Failing to detect or discover that *Legionella* bacteria had developed and flourished in the Fair's water supply and hot tubs and spa displays;

(f)   Failing to warn Fair invitees, including Plaintiffs, of the danger of the Fair's water supply and hot tubs and spa displays which contained the *Legionella* bacteria;

(g)   Failing to adopt, enact, employ and enforce a water management plan or water management program to reduce *Legionella* growth and spread in the Fair's water supply and hot tubs and spa displays;

(h)   Failing to follow recognized federal, state and county guidelines and regulations to reduce the risk of *Legionella* exposure from the Fair's water supply and hot tubs and spa displays so as to prevent cases and outbreaks of Legionnaires disease;

(i)   Failing to follow ANSI/ASHRAE Standard 188, *Legionellosis: Risk Management for Building Water Systems*; and

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

   (j)  Failing to follow ASHRAE Guidelines 12-2000, *Minimizing the Risk of Legionellosis Associated With Building Water Systems*. (*Myer* petition at ¶ 46.)

  23. The *Myer* petition includes the following allegations under **Count II – Negligence** *Per Se*:

   At all times pertinent hereto, Defendants were subject to Tex. Admin. Code, Title 25, Subchapter L – Standards for Public Pools and Spas (*Myer* petition at ¶ 48.)

   Pursuant to Tex. Admin. Code, Defendants owed a legal duty to guests and visitors at the Fair, including Plaintiffs, to keep the water supply reasonable safe for the activities for which it was regularly used and reasonably foreseen to be used. This duty extended to the Defendants' hot tubs and spa displays. (*Myer* petition at ¶ 49.)

  24. The *Myer* petition includes the following allegations under **Count III – Gross Negligence**:

   Plaintiffs are entitled to an award of punitive damages because of the Defendants wanton and reckless disregard and deliberate indifference to the safety of the invitees to the Fair, including Plaintiffs. Objectively, Defendants' actions involved in an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, Defendants had actual, subjective awareness of the risk but proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiffs. (*Myer* petition at ¶ 53.)

## *GUTIERREZ* ACTION

  25. On July 29, 2021, a petition was filed in the District Court for Smith County, TX (Cause No. 21-1783-B) entitled *Gutierrez v. Fusion Pacific, et al.* (hereinafter the "*Gutierrez* action"). (A copy of the *Gutierrez* petition is attached as Exhibit E.) FPI is named as a defendant.

  26. The *Gutierrez* petition contains the following general allegations:

   On or about September 20-28, 2019 Ruben Gutierrez was a business invitee and entered upon the premises of The East Texas State Fair in Smith County, Texas. During the time that Mr. Gutierrez was upon Defendant's property Plaintiff utilized

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

was at and near [sic] the Fusion Pacific and Hard Cover Hot Tub spa and hot tub displays and that the facility offered relevant hereto.   (*Gutierrez* petition at ¶ 9.)

During the normal course of use, water from the facility's water systems was heated and the water therein was caused to steam, vaporize, and become aerosolized. Upon information and belief, the *Legionella* bacteria that were present in the water system were inhaled and ingested by the Plaintiff.  (*Gutierrez* petition at ¶ 10.)

On September 29, 2019, Ruben Gutierrez began to experience symptoms consistent with Legionnaires' disease. He experienced these symptoms, including respiratory symptoms, cough, lethargy, body aches, and fever, well within the incubation period of Legionnaires' disease after his exposure at The East Texas State Fair. . . On October 1, 2019 Dr. Ellis called Mr. Gutierrez and told him not to take the antibiotics he had been prescribed and told him to go an Emergency Room since his urinalysis showed a positive result for Legionnaires' disease. . . At the time of his discharge Mr. Gutierrez still was experiencing symptoms related to Legionnaires' disease. . . On November 8, 2019 Mr. Gutierrez became non-responsive and died later that afternoon. Mrs. Gutierrez was contacted by NEThealth who informed her that Mr. Gutierrez had been exposed to *Legionella* bacteria.  (*Gutierrez* petition at ¶ 11.)

*Legionella* bacteria, which are the cause of Legionnaires' disease, have an incubation period of 2 to 10 days within the human body. Mr. Gutierrez's presence at The East Texas State Fair is squarely within the incubation period of the bacteria and their use of the water system, hot tubs and spas is consistent with the likely cause of the disease.  (*Gutierrez* petition at ¶ 12.)

Upon information and belief, Ruben Gutierrez acquired Legionnaires' disease at the property premises of The East Texas State Fair in Smith County, Texas at 2112 W. Front Street, Tyler TX, 75702 from a Fusion Pacific and Hard Cover Hot Tub spa and hot tub display. In addition, Mr. Gutierrez was likely exposed to the *Legionella* bacteria through the hot tub display owned and operated by SCM Relaxation, a division of Soft Fun, LLC. Legionnaires' disease was the direct and proximate cause of Ruben Gutierrez becoming seriously ill and ultimately dying.  (*Gutierrez* petition at ¶ 13.)

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

27.    The *Gutierrez* petition contains the following allegations under **Count I – Negligence**:

> The Defendants breached their duty to the [sic] Mr. Gutierrez in the following respects when it knew or should have known that its acts and omissions created an unreasonable risk of harm to its invitees:
>
> (a) In failing to adequately inspect the premises and its systems for dangerous conditions including, but not limited to, the presence of *Legionella* bacteria;
>
> (b) In failing to adequately inspect, monitor, and maintain the water systems, hot tubs and spas when such inspections, monitoring, and maintenance would have discovered the presence of *Legionella*;
>
> (c) In failing to properly train and supervise its employees or those to whom it had entrusted the care and maintenance of the water systems, and in particular in failing to train or instruct them to recognize the presence of *Legionella* bacteria and the risks such bacteria present;
>
> (d) In failing to adopt, enact, employ, and enforce proper and adequate maintenance programs, precautions, procedures, measures, and plans for the detection of *Legionella* in its systems;
>
> (e) In failing to warn invitees of the presence of *Legionella*;
>
> (f) In failing to perform and furnish services, including testing and proper maintenance of the water systems, showers, hot tubs, spas, saunas and pools, in conformity with the standard of care then prevailing in the hospitality industry when such services would have disclosed the presence of *Legionella*;
>
> (g) In failing to have in force an inspection program of the water systems, hot tubs and spas when such an inspection program would have disclosed the presence of *Legionella*;
>
> (h) In breaching its duty to provide a reasonably safe environment for its invitees; and
>
> (i) In failing to adequately treat its water systems, hot tubs, and spas with chlorine or other biocidal chemicals.  (*Gutierrez* petition at ¶ 17.)

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

16

COMPLAINT FOR DECLARATORY JUDGMENT

28.     The *Gutierrez* petition contains the following allegations under **Count II – Negligence *Per Se***:

> Defendants owed a legal duty to guests and visitors at The East Texas State Fair and the Fusion Pacific and Hard Cover Hot Tub and SCM Relaxation displays, and specifically to the Plaintiff, to keep the water systems reasonably safe for the activities for which it was regularly used and reasonably foreseen to be used. This duty extended to the water in the hot tubs and spas and displays. Defendants breached their duty. (*Gutierrez* petition at ¶ 19.)

> As a proximate cause of Defendants' breach of their duty to Plaintiff, Plaintiff has sustained the serious injuries alleged above. Plaintiff therefore demands judgment against Defendants, jointly and severally, in an appropriate amount and requests that Plaintiff be awarded compensatory damages, as well as pre- and post-judgment interest, and such other relief as the law may allow.  (*Gutierrez* petition at ¶ 20.)

## ADMIRAL'S DEFENSE OF FPI THROUGH A RESERVATION OF RIGHTS

29.     While Admiral initially disclaimed coverage for the underlying actions, Admiral on December 22, 2021 agreed to assume FPI's defense in the underlying actions through a reservation of rights including (without limitation) the right to disclaim coverage based on the microorganism exclusion.  Additionally, FPI was advised in writing that Admiral will fully: (1) reimburse FPI for all defense fees and costs incurred by FPI in defending the underlying actions from the date of tender through the present; (2) reimburse FPI for all reasonable defense fees and costs incurred in the future in defending the underlying actions unless there is an adjudication that Admiral's duty to defend is discharged; (3) and participate in all settlement negotiations on behalf of FPI relating to resolution of the underlying actions.

## GENERAL ALLEGATIONS

30.     Admiral contends the *Brown*, *Myer* and *Gutierrez* petitions allege bodily injury solely and inextricably in connection with Legionnaire's disease

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

COMPLAINT FOR DECLARATORY JUDGMENT

caused exclusively by exposure to *legionella* bacteria due to contaminated water in FPI's spa and hot-tub exhibits at the East Texas State Fair.

31.     Admiral alleges the Admiral CGL policy contractually obligates Admiral to pay those sums that FPI becomes legally obligated to pay as damages because of "bodily injury," "property damage," and "personal and advertising injury" to which the insurance applies, subject to the conditions, definitions, exclusions and all other terms of the policy — including (without limitation) the microorganism exclusion.

32.     Admiral is informed, believes and alleges that the genesis of Legionnaire's disease is *legionella* bacterium.  Admiral also alleges that a "microorganism" is an organism such as a bacterium of microscopic size, and generally refers to bacteria, fungi, viruses, and bacterial spores.  Admiral further alleges Legionnaire's disease is essentially a form of pneumonia that is caused by the bacterium *legionella*.

33.     Admiral alleges the bodily-injury claims alleged in the *Brown*, *Myer* and *Gutierrez* petitions fall squarely within the microorganism exclusion attached to the Admiral CGL policy, which eliminates any duty to defend and/or indemnify FPI through the Admiral CGL policy.

34.     Admiral alleges the bodily-injury claims alleged in the *Brown*, *Myer* and *Gutierrez* petitions are excluded by the Admiral excess policy in that the exclusions applicable to any "controlling underlying insurance" (the Admiral CGL policy) apply to the Admiral excess policy.

35.     Admiral is informed, believes and alleges FPI contends the Admiral policies provide blanket coverage to FPI for bodily-injury liability regardless of the conditions, definitions, exclusions and other terms contained in the Admiral policies.

/ / /

/ / /

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

# FIRST CAUSE OF ACTION

## Declaratory Judgment – No Duty To Defend FPI From & Against
## The Claims Alleged In The *Brown* Action

(Against Defendant FPI)

36.     Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

37.     Admiral contends the claims asserted against FPI in the *Brown* action are not potentially covered by the Admiral policies due to the microorganism exclusion attached to the Admiral CGL policy, which applies to the Admiral excess policy.

38.     Admiral is informed, believes and alleges FPI contends the claims asserted against FPI in the *Brown* action are potentially covered by the Admiral policies regardless of the microorganism exclusion.

39.     An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policies.  Specifically, there is a controversy over the issue of whether Admiral owes a duty to defend FPI in the *Brown* action.

40.     The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute, in that FPI alleges Admiral owes a duty to defend FPI from and against all claims alleged in the *Brown* action.

41.     Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and Rule 57 of the Federal Rules of Civil Procedure (FRCP), declaring Admiral owes no duty to defend FPI in the *Brown* action.

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

19
COMPLAINT FOR DECLARATORY JUDGMENT

**<u>SECOND CAUSE OF ACTION</u>**

**Declaratory Judgment – No Duty To Indemnify FPI From & Against**

**The Claims Alleged In The *Brown* Action**

(Against Defendant FPI)

42.    Admiral incorporates and realleges all previous paragraphs as though fully set forth at length herein.

43.    Admiral contends the claims asserted against FPI in the *Brown* action are not actually covered by the Admiral policies due to the microorganism exclusion attached to the Admiral CGL policy which applies to the Admiral excess policy.

44.    Admiral is informed, believes and alleges FPI contends the claims asserted against FPI in the *Brown* action are actually covered by the Admiral policies regardless of the microorganism exclusion.

45.    An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policies.  Specifically, there is a controversy over the issue of whether the Admiral policies actually cover the claims asserted in the *Brown* action, and if Admiral owes a duty to indemnify FPI.

46.    The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute, in that FPI alleges Admiral owes a duty to indemnify FPI from and against all claims alleged in the *Brown* action.

47.    Accordingly, Admiral desires a judicial determination and declaratory judgment that Admiral owes no duty to indemnify FPI for claims asserted in the *Brown* action.

/ / /

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

## **THIRD CAUSE OF ACTION**

### **Declaratory Judgment – No Duty To Defend FPI From & Against**

### **The Claims Alleged In The *Myer* Action**

(Against Defendant FPI)

48.     Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

49.     Admiral contends the claims asserted against FPI in the *Myer* action are not potentially covered by the Admiral policies due to the microorganism exclusion attached to the Admiral CGL policy, which applies to the Admiral excess policy.

50.     Admiral is informed, believes and alleges FPI contends the claims asserted against FPI in the *Myer* action are potentially covered by the Admiral policies regardless of the microorganism exclusion.

51.     An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policies.  Specifically, there is a controversy over the issue of whether Admiral owes a duty to defend FPI in the *Myer* action.

52.     The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute, in that FPI alleges Admiral owes a duty to defend FPI from and against all claims alleged in the *Myer* action.

53.     Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and FRCP Rule 57, declaring Admiral owes no duty to defend FPI in the *Myer* action.

/ / /

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

## **FOURTH CAUSE OF ACTION**

## **Declaratory Judgment – No Duty To Indemnify FPI From & Against The Claims Alleged In The *Myer* Action**

(Against Defendant FPI)

54.      Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

55.      Admiral contends the claims asserted against FPI in the *Myer* action are not actually covered by the Admiral policies due to the microorganism exclusion attached to the Admiral CGL policy which is applicable to the Admiral excess policy.

56.      Admiral is informed, believes and alleges FPI contends the claims asserted against FPI in the *Myer* action are actually covered by the Admiral policies regardless of the microorganism exclusion.

57.      An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policies.  Specifically, there is a controversy over the issue of whether the Admiral policies actually cover the claims asserted in the *Myer* action, and if Admiral owes a duty to indemnify FPI.

58.      The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute, in that FPI alleges Admiral owes a duty to indemnify FPI from and against all claims alleged in the *Myer* action.

59.      Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and FRCP Rule 57, declaring Admiral owes no duty to indemnify FPI in the *Myer* action.

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

# FIFTH CAUSE OF ACTION

## Declaratory Judgment – No Duty To Defend FPI From & Against The Claims Alleged In The *Gutierrez* Action

### (Against Defendant FPI)

60.     Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

61.     Admiral contends the claims asserted against FPI in the *Gutierrez* action are not potentially covered by the Admiral policies due to the microorganism exclusion attached to the Admiral CGL policy, which applies to the Admiral excess policy.

62.     Admiral is informed, believes and alleges FPI contends the claims asserted against FPI in the *Gutierrez* action are potentially covered by the Admiral policies regardless of the microorganism exclusion.

63.     An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policies.  Specifically, there is a controversy over the issue of whether Admiral owes a duty to defend FPI in the *Gutierrez* action.

64.     The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute, in that FPI alleges Admiral owes a duty to defend FPI from and against all claims alleged in the *Gutierrez* action.

65.     Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and FRCP Rule 57, declaring Admiral owes no duty to defend FPI in the *Gutierrez* action.

/ / /

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

## SIXTH CAUSE OF ACTION

### Declaratory Judgment – No Duty To Indemnify FPI From & Against The Claims Alleged In The *Gutierrez* Action

(Against Defendant FPI)

66.     Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

67.     Admiral contends the claims asserted against FPI in the *Gutierrez* action are not actually covered by the Admiral policies due to the microorganism exclusion attached to the Admiral CGL policy which is applicable to the Admiral excess policy.

68.     Admiral is informed, believes and alleges FPI contends the claims asserted against FPI in the *Gutierrez* action are actually covered by the Admiral policies regardless of the microorganism exclusion.

69.     An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policies.  Specifically, there is a controversy over the issue of whether the Admiral policies actually cover the claims asserted in the *Gutierrez* action, and if Admiral owes a duty to indemnify FPI.

70.     The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute, in that FPI alleges Admiral owes a duty to indemnify FPI from and against all claims alleged in the *Gutierrez* action.

71.     Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and FRCP Rule 57, declaring Admiral owes no duty to indemnify FPI in the *Gutierrez* action.

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

COMPLAINT FOR DECLARATORY JUDGMENT

## SEVENTH CAUSE OF ACTION

**Equitable Reimbursement – Defense Fees & Costs – *Brown* Action**

(Against Defendant FPI)

72.    Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

73.    Admiral alleges it has incurred or will incur defense fees and costs in defending FPI in the *Brown* action.

74.    Admiral alleges certain fees and costs expended in defending FPI in the *Brown* action are for claims not covered by the Admiral policy.

75.    Admiral's payment of defense fees and costs on behalf of FPI in the *Brown* action is conditioned on a reservation of rights, including the right to seek equitable reimbursement for the payment of non-covered claims.

76.    To the extent Admiral defended FPI in connection with the *Brown* action for non-covered claims, FPI has been unjustly enriched.

77.    Admiral has an implied-in-law right to reimbursement from an insured for the defense of non-covered claims.

78.    As a result of FPI's unjust enrichment — and consistent with *Buss v. Superior Court*, 16 Cal.4th 35 (Cal. 1997), *Scottsdale Insurance Company v. MV Transportation*, 36 Cal.4th 643 (Cal. 2005), and *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489 (Cal. 2001) — Admiral is entitled to reimbursement of the defense fees and costs made on behalf of FPI in the *Brown* action for non-covered claims, as Admiral owed no duty to defend such claims.

79.    Accordingly, Admiral seeks equitable reimbursement of defense fees and costs made on behalf of FPI attributable to non-covered claims alleged in the *Brown* action.

/ / /

/ / /

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EIGHTH CAUSE OF ACTION**

**Declaratory Judgment – Equitable Reimbursement/Defense Fees & Costs –**

***Brown* Action**

(Against Defendant FPI)

80.    Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

81.    Admiral alleges it has incurred or will incur defense fees and costs on behalf of FPI in the *Brown* action for non-covered claims.  As such, Admiral is entitled to equitable reimbursement of the defense fees and costs incurred to defend FPI from and against non-covered claims.

82.    Admiral is informed and alleges FPI contends Admiral is not entitled to equitable reimbursement of defense fees and costs incurred to defend FPI from and against non-covered claims.

83.    An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policy.  Specifically, there is a controversy over the issue of whether Admiral is entitled to equitable reimbursement of defense fees and costs incurred to defend FPI from and against non-covered claims.

84.    The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute.

85.    Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and FRCP Rule 57, declaring Admiral is entitled to equitable reimbursement of defense fees and costs incurred to defend FPI from and against non-covered claims alleged in the *Brown* action.

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

26

COMPLAINT FOR DECLARATORY JUDGMENT

**NINTH CAUSE OF ACTION**

**Equitable Reimbursement – Indemnity Payment –** *Brown* **Action**

(Against Defendant FPI)

86.     Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

87.     Admiral alleges it will make a payment to indemnify FPI in the *Brown* action.

88.     Admiral alleges payments made to indemnify FPI in the *Brown* action are for claims not covered by the Admiral policy.

89.     Admiral's indemnity payment on behalf of FPI in the *Brown* action is conditioned on a reservation of rights, including the right to seek equitable reimbursement for the payment of non-covered claims.

90.     To the extent Admiral indemnifies FPI in connection with the *Brown* action for non-covered claims, FPI has been unjustly enriched.

91.     Admiral has an implied-in-law right to reimbursement from an insured for indemnification of non-covered claims.

92.     As a result of FPI's unjust enrichment — and consistent with *Buss v. Superior Court*, *supra*, 16 Cal.4th 35, *Scottsdale Insurance Company v. MV Transportation*, *supra*, 36 Cal.4th 643, and *Blue Ridge Ins. Co. v. Jacobsen*, *supra*, 25 Cal.4th 489 — Admiral is entitled to reimbursement of any indemnity payment made on behalf of FPI in the *Brown* action for non-covered claims, as Admiral owed no duty to indemnify such claims.

93.     Accordingly, Admiral seeks equitable reimbursement of any indemnity payment made on behalf of FPI attributable to non-covered claims alleged in the *Brown* action.

/ / /

/ / /

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

**TENTH CAUSE OF ACTION**

**Declaratory Judgment – Equitable Reimbursement/Indemnity Payment –**

***Brown* Action**

(Against Defendant FPI)

94.    Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

95.    Admiral alleges it will make a payment to indemnify FPI in the *Brown* action for non-covered claims.  As such, Admiral is entitled to equitable reimbursement of any payment made to indemnify FPI from and against non-covered claims.

96.    Admiral is informed and alleges FPI contends Admiral is not entitled to equitable reimbursement of any payment made to indemnify FPI from and against non-covered claims.

97.    An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policy.  Specifically, there is a controversy over the issue of whether Admiral is entitled to equitable reimbursement of any payment made to indemnify FPI from and against non-covered claims.

98.    The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute.

99.    Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and FRCP Rule 57, declaring Admiral is entitled to equitable reimbursement of any indemnity payment made to indemnify FPI from and against non-covered claims alleged in the *Brown* action.

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

## **ELEVENTH CAUSE OF ACTION**

### **Equitable Reimbursement – Defense Fees & Costs – *Myer* Action**

### (Against Defendant FPI)

100.   Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

101.   Admiral alleges it has incurred or will incur defense fees and costs in defending FPI in the *Myer* action.

102.   Admiral alleges certain fees and costs expended in defending FPI in the *Myer* action are for claims not covered by the Admiral policy.

103.   Admiral's payment of defense fees and costs on behalf of FPI in the *Myer* action is conditioned on a reservation of rights, including the right to seek equitable reimbursement for the payment of non-covered claims.

104.   To the extent Admiral defended FPI in connection with the *Myer* action for non-covered claims, FPI has been unjustly enriched.

105.   Admiral has an implied-in-law right to reimbursement from an insured for the defense of non-covered claims.

106.   As a result of FPI's unjust enrichment — and consistent with *Buss v. Superior Court*, *supra*, 16 Cal.4th 35, *Scottsdale Insurance Company v. MV Transportation*, *supra*, 36 Cal.4th 643, and *Blue Ridge Ins. Co. v. Jacobsen*, *supra*, 25 Cal.4th 489 — Admiral is entitled to reimbursement of the defense fees and costs made on behalf of FPI in the *Myer* action for non-covered claims, as Admiral owed no duty to defend such claims.

107.   Accordingly, Admiral seeks equitable reimbursement of defense fees and costs made on behalf of FPI attributable to non-covered claims alleged in the *Myer* action.

/ / /

/ / /

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

**TWELFTH CAUSE OF ACTION**

**Declaratory Judgment – Equitable Reimbursement/Defense Fees & Costs –**

*Myer* **Action**

(Against Defendant FPI)

108.    Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

109.    Admiral alleges it has incurred or will incur defense fees and costs on behalf of FPI in the *Myer* action for non-covered claims.  As such, Admiral is entitled to equitable reimbursement of the defense fees and costs incurred to defend FPI from and against non-covered claims.

110.    Admiral is informed and alleges FPI contends Admiral is not entitled to equitable reimbursement of defense fees and costs incurred to defend FPI from and against non-covered claims.

111.    An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policy.  Specifically, there is a controversy over the issue of whether Admiral is entitled to equitable reimbursement of defense fees and costs incurred to defend FPI from and against non-covered claims.

112.    The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute.

113.    Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and FRCP Rule 57, declaring Admiral is entitled to equitable reimbursement of defense fees and costs incurred to defend FPI from and against non-covered claims alleged in the *Myer* action.

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

## THIRTEENTH CAUSE OF ACTION

### Equitable Reimbursement – Indemnity Payment – *Myer* Action

(Against Defendant FPI)

114.    Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

115.    Admiral alleges it will make a payment to indemnify FPI in the *Myer* action.

116.    Admiral alleges payments made to indemnify FPI in the *Myer* action are for claims not covered by the Admiral policy.

117.    Admiral's indemnity payment on behalf of FPI in the *Myer* action is conditioned on a reservation of rights, including the right to seek equitable reimbursement for the payment of non-covered claims.

118.    To the extent Admiral indemnifies FPI in connection with the *Myer* action for non-covered claims, FPI has been unjustly enriched.

119.    Admiral has an implied-in-law right to reimbursement from an insured for indemnification of non-covered claims.

120.    As a result of FPI's unjust enrichment — and consistent with *Buss v. Superior Court*, *supra*, 16 Cal.4th 35, *Scottsdale Insurance Company v. MV Transportation*, *supra*, 36 Cal.4th 643, and *Blue Ridge Ins. Co. v. Jacobsen*, *supra*, 25 Cal.4th 489 — Admiral is entitled to reimbursement of any indemnity payment made on behalf of FPI in the *Myer* action for non-covered claims, as Admiral owed no duty to indemnify such claims.

121.    Accordingly, Admiral seeks equitable reimbursement of any indemnity payment made on behalf of FPI attributable to non-covered claims alleged in the *Myer* action.

/ / /

/ / /

WALSH McKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

31
COMPLAINT FOR DECLARATORY JUDGMENT

### FOURTEENTH CAUSE OF ACTION

**Declaratory Judgment – Equitable Reimbursement/Indemnity Payment –**

***Myer* Action**

(Against Defendant FPI)

122.   Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

123.   Admiral alleges it will make a payment to indemnify FPI in the *Myer* action for non-covered claims.  As such, Admiral is entitled to equitable reimbursement of any payment made to indemnify FPI from and against non-covered claims.

124.   Admiral is informed and alleges FPI contends Admiral is not entitled to equitable reimbursement of any payment made to indemnify FPI from and against non-covered claims.

125.   An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policy.  Specifically, there is a controversy over the issue of whether Admiral is entitled to equitable reimbursement of any payment made to indemnify FPI from and against non-covered claims.

126.   The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute.

127.   Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and FRCP Rule 57, declaring Admiral is entitled to equitable reimbursement of any indemnity payment made to indemnify FPI from and against non-covered claims alleged in the *Myer* action.

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

# FIFTEENTH CAUSE OF ACTION

## Equitable Reimbursement – Defense Fees & Costs – *Gutierrez* Action

### (Against Defendant FPI)

128. Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

129. Admiral alleges it has incurred or will incur defense fees and costs in defending FPI in the *Gutierrez* action.

130. Admiral alleges certain fees and costs expended in defending FPI in the *Gutierrez* action are for claims not covered by the Admiral policy.

131. Admiral's payment of defense fees and costs on behalf of FPI in the *Gutierrez* action is conditioned on a reservation of rights, including the right to seek equitable reimbursement for the payment of non-covered claims.

132. To the extent Admiral defended FPI in connection with the *Gutierrez* action for non-covered claims, FPI has been unjustly enriched.

133. Admiral has an implied-in-law right to reimbursement from an insured for the defense of non-covered claims.

134. As a result of FPI's unjust enrichment — and consistent with *Buss v. Superior Court*, *supra*, 16 Cal.4th 35, *Scottsdale Insurance Company v. MV Transportation*, *supra*, 36 Cal.4th 643, and *Blue Ridge Ins. Co. v. Jacobsen*, *supra*, 25 Cal.4th 489 — Admiral is entitled to reimbursement of the defense fees and costs made on behalf of FPI in the *Gutierrez* action for non-covered claims, as Admiral owed no duty to defend such claims.

135. Accordingly, Admiral seeks equitable reimbursement of defense fees and costs made on behalf of FPI attributable to non-covered claims alleged in the *Gutierrez* action.

/ / /

/ / /

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

## SIXTEENTH CAUSE OF ACTION

### Declaratory Judgment – Equitable Reimbursement/Defense Fees & Costs – *Gutierrez* Action

(Against Defendant FPI)

136.   Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

137.   Admiral alleges it has incurred or will incur defense fees and costs on behalf of FPI in the *Gutierrez* action for non-covered claims.  As such, Admiral is entitled to equitable reimbursement of the defense fees and costs incurred to defend FPI from and against non-covered claims.

138.   Admiral is informed and alleges FPI contends Admiral is not entitled to equitable reimbursement of defense fees and costs incurred to defend FPI from and against non-covered claims.

139.   An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policy.  Specifically, there is a controversy over the issue of whether Admiral is entitled to equitable reimbursement of defense fees and costs incurred to defend FPI from and against non-covered claims.

140.   The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute.

141.   Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and FRCP Rule 57, declaring Admiral is entitled to equitable reimbursement of defense fees and costs incurred to defend FPI from and against non-covered claims alleged in the *Gutierrez* action.

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

## SEVENTEENTH CAUSE OF ACTION

### Equitable Reimbursement – Indemnity Payment – *Gutierrez* Action

(Against Defendant FPI)

142.    Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

143.    Admiral alleges it will make a payment to indemnify FPI in the *Gutierrez* action.

144.    Admiral alleges payments made to indemnify FPI in the *Gutierrez* action are for claims not covered by the Admiral policy.

145.    Admiral's indemnity payment on behalf of FPI in the *Gutierrez* action are conditioned on a reservation of rights, including the right to seek equitable reimbursement for the payment of non-covered claims.

146.    To the extent Admiral indemnifies FPI in connection with the *Gutierrez* action for non-covered claims, FPI has been unjustly enriched.

147.    Admiral has an implied-in-law right to reimbursement from an insured for indemnification of non-covered claims.

148.    As a result of FPI's unjust enrichment — and consistent with *Buss v. Superior Court*, *supra*, 16 Cal.4th 35, *Scottsdale Insurance Company v. MV Transportation*, *supra*, 36 Cal.4th 643, and *Blue Ridge Ins. Co. v. Jacobsen*, *supra*, 25 Cal.4th 489 — Admiral is entitled to reimbursement of any indemnity payment made on behalf of FPI in the *Gutierrez* action for non-covered claims, as Admiral owed no duty to indemnify such claims.

149.    Accordingly, Admiral seeks equitable reimbursement of any indemnity payment made on behalf of FPI attributable to non-covered claims alleged in the *Gutierrez* action.

/ / /

/ / /

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

## **EIGHTEENTH CAUSE OF ACTION**

### **Declaratory Judgment – Equitable Reimbursement/Indemnity Payment –**
### *Gutierrez* **Action**

(Against Defendant FPI)

150.   Admiral realleges and incorporates by reference as though fully set forth herein, each and every allegation contained in all previous paragraphs in this complaint.

151.   Admiral alleges it will make a payment to indemnify FPI in the *Gutierrez* action for non-covered claims.  As such, Admiral is entitled to equitable reimbursement of any payment made to indemnify FPI from and against non-covered claims.

152.   Admiral is informed and alleges FPI contends Admiral is not entitled to equitable reimbursement of any payment made to indemnify FPI from and against non-covered claims.

153.   An actual, justiciable and substantial controversy has arisen and now exists between Admiral and FPI concerning their rights and duties through the Admiral policy.  Specifically, there is a controversy over the issue of whether Admiral is entitled to equitable reimbursement of any payment made to indemnify FPI from and against non-covered claims.

154.   The interests of the parties are legally adverse.  Additionally, Admiral has a legally protectable interest in the controversy with no adequate or speedy remedy at law.  Furthermore, a substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to resolve the dispute.

155.   Accordingly, Admiral desires a judicial determination and judgment, pursuant to 28 U.S.C. section 2201 and FRCP Rule 57, declaring Admiral is entitled to equitable reimbursement of any indemnity payment made to indemnify FPI from and against non-covered claims alleged in the *Gutierrez* action.

COMPLAINT FOR DECLARATORY JUDGMENT

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

**PRAYER FOR RELIEF**

WHEREFORE, Admiral prays for judgment as follows:

**FIRST CAUSE OF ACTION**

1.      A judicial determination and declaratory judgment that Admiral owes no duty to defend FPI from and against claims asserted in the *Brown* action.

**SECOND CAUSE OF ACTION**

2.      A judicial determination and declaratory judgment that Admiral owes no duty to indemnify FPI from and against claims asserted in the *Brown* action.

**THIRD CAUSE OF ACTION**

3.      A judicial determination and declaratory judgment that Admiral owes no duty to defend FPI from and against claims asserted in the *Myer* action.

**FOURTH CAUSE OF ACTION**

4.      A judicial determination and declaratory judgment that Admiral owes no duty to indemnify FPI from and against claims asserted in the *Myer* action.

**FIFTH CAUSE OF ACTION**

5.      A judicial determination and declaratory judgment that Admiral owes no duty to defend FPI from and against claims asserted in the *Gutierrez* action.

**SIXTH CAUSE OF ACTION**

6.      A judicial determination and declaratory judgment that Admiral owes no duty to indemnify FPI from and against claims asserted in the *Gutierrez* action.

**SEVENTH CAUSE OF ACTION**

7.      Compensatory damages for equitable reimbursement from FPI for payment of fees and costs made by Admiral to defend FPI from and against non-covered claims in the *Brown* action.

**EIGHTH CAUSE OF ACTION**

8.      A judicial determination and declaratory judgment that Admiral is entitled to equitable reimbursement from FPI for payment of fees and costs made

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

by Admiral to defend FPI from and against non-covered claims in the *Brown* action.

**NINTH CAUSE OF ACTION**

9.    Compensatory damages for equitable reimbursement from FPI for any payment made by Admiral to indemnify FPI from and against non-covered claims in the *Brown* action.

**TENTH CAUSE OF ACTION**

10.    A judicial determination and declaratory judgment that Admiral is entitled to equitable reimbursement from FPI for any payment made on FPI's behalf to indemnify FPI from and against non-covered claims in the *Brown* action.

**ELEVENTH CAUSE OF ACTION**

11.    Compensatory damages for equitable reimbursement from FPI for payment of fees and costs incurred by Admiral to defend FPI from and against non-covered claims in the *Myer* action.

**TWELFTH CAUSE OF ACTION**

12.    A judicial determination and declaratory judgment that Admiral is entitled to equitable reimbursement from FPI for payment of fees and costs made by Admiral to defend FPI from and against non-covered claims in the *Myer* action.

**THIRTEENTH CAUSE OF ACTION**

13.    Compensatory damages for equitable reimbursement from FPI for any payment made by Admiral to indemnify FPI from and against non-covered claims in the *Myer* action.

**FOURTEENTH CAUSE OF ACTION**

14.    A judicial determination and declaratory judgment that Admiral is entitled to equitable reimbursement from FPI for any payment made on FPI's behalf to indemnify FPI from and against non-covered claims in the *Myer* action.

/ / /

/ / /

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

**FIFTEENTH CAUSE OF ACTION**

15. Compensatory damages for equitable reimbursement from FPI for payment of fees and costs made by Admiral to defend FPI from and against non-covered claims in the *Gutierrez* action.

**SIXTEENTH CAUSE OF ACTION**

16. A judicial determination and declaratory judgment that Admiral is entitled to equitable reimbursement from FPI for payment of fees and costs made by Admiral to defend FPI from and against non-covered claims in the *Gutierrez* action.

**SEVENTEENTH CAUSE OF ACTION**

17. Compensatory damages for equitable reimbursement from FPI for any payment made by Admiral to indemnify FPI from and against non-covered claims in the *Gutierrez* action.

**EIGHTEENTH CAUSE OF ACTION**

18. A judicial determination and declaratory judgment that Admiral is entitled to equitable reimbursement from FPI for any payment made on FPI's behalf to indemnify FPI from and against non-covered claims in the *Gutierrez* action.

**ALL CAUSES OF ACTION**

19. Cost of suit incurred herein.

20. Such other and further relief as the court deems proper and appropriate by the court.

DATED: January 18, 2022                  WALSH MCKEAN FURCOLO LLP


By:  */s/ James T. Derfler*
       JAMES T. DERFLER
       Attorneys for Plaintiff
       ADMIRAL INSURANCE COMPANY

WALSH MCKEAN FURCOLO LLP
550 WEST C STREET
SUITE 950
SAN DIEGO, CALIFORNIA
92101-8569
TELEPHONE (619) 232-8486

# EXHIBIT "A"



**ADMIRAL** *INSURANCE GROUP, LLC.*

### Policyholder Message

| | | | |
|---|---|---|---|
| Named Insured: | INCA PLASTICS MOLDING CO.,INC. DBA ECO SPAS | Policy Number: | CA000025982-03 |

Dear Policyholder:

Our Corporate Headquarters' and Northeast Regional Branch Office mailing address is:

> Admiral Insurance Company (A Berkley Company)
> Mt. Laurel Corporate Park
> 1000 Howard Blvd., Suite 300, P.O. Box 5430
> Mt. Laurel, NJ 08054

Our telephone number:

General:          (856) 429 – 9200

If you need to report a claim please direct it:

I.     By regular or overnight mail to;

> Admiral Insurance Company (A Berkley Company)
> Mt. Laurel Corporate Park
> 1000 Howard Blvd., Suite 300 P.O. Box 5430
> Mt. Laurel, NJ 08054
> Attention: New Claim
> **Clearly state it is a "NEW CLAIM".**

II.    By Email to;

> admclaims@admiralins.com
> Do not email claims to ANY claims individual.

III.   By FAX to;

> Fax #: (856) 429-3630
> Attention: New Claim
> **Clearly state it is a "NEW CLAIM".**



# ADMIRAL INSURANCE COMPANY

### A Stock Company

## COMMERCIAL LINES POLICY

## THIS POLICY IS NOT OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

**THIS POLICY CONSISTS OF:**

- DECLARATIONS
- COMMON POLICY CONDITIONS
- ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:

    - ONE OR MORE COVERAGE FORMS
    - APPLICABLE FORMS AND ENDORSEMENTS

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
Secretary

_____
President and CEO

1000 Howard Blvd., Suite 300, P.O. Box 5430    Mt. Laurel, NJ 08054    Telephone (856) 429-9200  Facsimile (856) 429-8611

JA1001 (03/13)                              a W. R. Berkley Company

Policy Number: CA000025982-03



**A I 80 00 09 17**

Effective Date: 12/21/2018

**Named Insured:**   INCA PLASTICS MOLDING CO.,INC.
DBA ECO SPAS

## IMPORTANT – POLICYHOLDER NOTICES

### Form Intentionally Left Blank

Policy Number: CA000025982-03                                         **AI 07 34 01 17**

Effective Date: 12/21/2018

# CALIFORNIA DISCLOSURE NOTICE

1. **THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

2. **THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

3. **THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

4. **THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357 OR INTERNET WEB SITE WWW.INSURANCE.CA.GOV. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.**

5. **FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT**

STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE
INFORMATION ABOUT THAT INSURER.

6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER
SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE
UNITED STATES AND SHOULD BE ON THE NAIC'S
INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF
APPROVED NONADMITTED NON-UNITED STATES INSURERS.
ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER
TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS
LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE
INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE
INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF
INSURANCE: WWW.INSURANCE.CA.GOV.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE
INSURANCE POLICY YOU HAVE PURCHASED BE BOUND
IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE
WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR
BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE
WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE
THIS DISCLOSURE FORM AND A REQUEST FOR YOUR
SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE,
YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN
FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU
CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED
AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE
WILL BE RETURNED TO YOU.

**D-2 (Effective January 1, 2017)**

**ADMIRAL INSURANCE COMPANY**

A STOCK COMPANY
(herein called **the Company**)



**COMMON POLICY**
DECLARATIONS

**Policy No.:** <u>CA000025982-03</u>         **Renewal/Rewrite of:**         <u>CA000025982-02</u>

| Named Insured and Mailing Address |
| --- |

INCA PLASTICS MOLDING CO., INC.
FUSION PACIFIC, INC.
DBA ECO SPAS
17129 KOALA ROAD
ADELANTO, CA 92301

**POLICY PERIOD:** From      12/21/2018   to   12/21/2019   At 12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein

**THE NAMED INSURED IS:**      Corporation

**BUSINESS DESCRIPTION:**      RV storage tanks and polyethylene shell spas MFG

**AUDIT PERIOD:**      Annual

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGES FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

Commercial General Liability Coverage

Products/Completed Operations Liability Coverage

PREMIUM:

TERRORISM PREMIUM:

TOTAL PREMIUM:

Form(s) and Endorsement(s) made a part of this policy at inception:
REFER TO SCHEDULE OF FORMS, A100 18 03 98

This policy is not binding unless countersigned by Admiral Insurance Company or its authorized representative.

Countersigned On:          1/15/2019                 By: _____
                                                                        Authorized Representative

At:          Seattle, WA

THESE COMMON POLICY DECLARATIONS AND THE COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS (OR PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART DECLARATIONS), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), FORM(S) AND ENDORSEMENT(S), IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.



## COMMERCIAL GENERAL LIABILITY COVERAGE PART

### DECLARATIONS

**Policy No.:** __CA000025982-03__          Effective Date: __12/21/2018__  12:01 A. M., Standard Time

### LIMITS   OF   INSURANCE

| | | | |
|---|---|---|---|
| General Aggregate Limit (Other Than Products- Completed Operations) | $ | 2,000,000 | |
| Products - Completed Operations Aggregate Limit | $ | 2,000,000 | |
| Personal and Advertising Injury Limit | $ | 1,000,000 | |
| Each Occurrence Limit | $ | 1,000,000 | |
| Damage To Premises  Rented To You Limit | $ | 300,000 | Any One Premises |
| Medical Expense Limit | $ | 10,000 | Any One Person |

### RETROACTIVE   DATES

Coverages A and B of this insurance do not apply to "bodily injury", "property damage" or "personal and advertising injury" which occurs before the Retroactive Date, if any, shown here          __None__

(Enter Date or "None" if no Retroactive Date Applies)

### PREMIUM

| Classification | Code No. | Premium Basis | Rate | Per | Advance Premium |
|---|---|---|---|---|---|
| OPERATIONS RATED AS: RV storage tanks and polyethylene shell spas MFG | 58058 | $8,000,000 | $3.25 | $1,000 of Sales | $26,000.00 |
| | | | Total Advance Premium | | $26,000.00 |
| | | | Minimum Term Premium | | $26,000.00 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

DE 20 02 07 00                         *a W. R. Berkley Company*                         Page 1 of 1

# SCHEDULE OF FORMS

**Named Insured:**   INCA PLASTICS MOLDING CO.,INC.
                     DBA ECO SPAS                                **Policy No.:** CA000025982-03

| FORM NUMBER | TITLE |
| --- | --- |
| JA10010313 | COVER JACKET - ADMIRAL INSURANCE COMPANY |
| AI07340117 | CALIFORNIA DISCLOSURE NOTICE |
| DE20010700 | COMMON POLICY DECLARATIONS |
| DE20020700 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| AI00180398 | SCHEDULE OF FORMS |
| CG00010413 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG04360413 | LIMITED PRODUCT WITHDRAWAL EXPENSE ENDORSEMENT |
| CG21060514 | EXCLUSION-ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG21490999 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG21750115 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES |
| CG24260413 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG24500615 | LIMITED COVERAGE FOR DESIGNATED UNMANNED AIRCRAFT |
| IL00171198 | COMMON POLICY CONDITIONS |
| IL00210702 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| AD08420216 | BODILY INJURY REDEFINED |

| | |
|---|---|
| AD66090295 | MINIMUM PREMIUM AND MINIMUM RETAINED PREMIUM AMENDATORY ENDORSEMENT |
| AD66110511 | DEDUCTIBLE LIABILITY INSURANCE |
| AD66140909 | LIMITATION OF COVERAGE TO DESIGNATED PRODUCTS |
| AD68830413 | LONG TERM EXPOSURE EXCLUSIONS JOINT FORM |
| AD69371015 | MANUFACTURERS AND DISTRIBUTORS ENHANCED COVERAGE Commercial General Liability Coverage Form |
| AD69391015 | SWING PREMIUM AND PREMIUM AUDIT WAIVER |
| AD66660909 | SPECIFIED OPERATION EXCLUSION |
| AD68881213 | SPECIAL EXCLUSIONS JOINT FORM OCCURRENCE VERSION |
| AD67480511 | INTELLECTUAL PROPERTY EXCLUSION (AMENDED DEFINITION OF PERSONAL AND ADVERTISING INJURY) |
| AD67600415 | PREMIUM BASIS DEFINITION-GROSS SALES |
| AI07100818 | SERVICE OF SUIT - CALIFORNIA |

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

© Insurance Services Office, Inc., 2012

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i.  Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.  Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.  Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l.  Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.  Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.  Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o.  War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p.  Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

© Insurance Services Office, Inc., 2012

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

    **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

    **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

    **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

    **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

    **(a)** Obtain records and other information related to the "suit"; and

    **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

  **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

  **f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  **(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

  **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   **(a)** When all of the work called for in your contract has been completed.

   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   **a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;

   **(b)** Others trading under your name; or

   **(c)** A person or organization whose business or assets you have acquired; and

   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

     (1) Work or operations performed by you or on your behalf; and

     (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

     (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

     (2) The providing of or failure to provide warnings or instructions.

Policy Number: CA000025982-03                                    **CG 04 36 04 13**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED PRODUCT WITHDRAWAL EXPENSE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Aggregate Limit | $  10,000 | |
|---|---|---|
| Deductible Amount Per Product Withdrawal | $  2,500 | |
| Participation Percentage Per Product Withdrawal | 0 | % |
| Cut-off Date:  12/21/2016 | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**THIS ENDORSEMENT ONLY PROVIDES REIMBURSEMENT TO YOU FOR EXPENSES INCURRED BECAUSE OF A COVERED "PRODUCT WITHDRAWAL".  THIS ENDORSEMENT DOES NOT PROVIDE ANY LIABILITY COVERAGE OR COVERAGE FOR THE COST OR EXPENSE OF DEFENDING ANY CLAIM OR SUIT.**

**A.** The following is added to **Section I – Coverages:**

**Section I – Limited Product Withdrawal Expense Coverage**

**1. Insuring Agreement**

**a.** We will reimburse you for "product withdrawal expenses" incurred by you because of a "product withdrawal" to which this insurance applies.

The amount of such reimbursement is limited as described in Section III – Limits Of Insurance. No other obligation or liability to pay sums or perform acts or services is covered.

**b.** This insurance applies to a "product withdrawal" only if the "product withdrawal" is initiated in the "coverage territory" during the policy period because:

**(1)** You determine that the "product withdrawal" is necessary; or

**(2)** An authorized government entity has ordered you to conduct a "product withdrawal".

**c.** We will reimburse "product withdrawal expenses" only if:

**(1)** The expenses are incurred within one year of the date the "product withdrawal" was initiated;

**(2)** The expenses are reported to us within one year of the date the expenses were incurred; and

**(3)** The product that is the subject of the "product withdrawal" was produced after the Cut-off Date designated in the Schedule.

**d.** The initiation of a "product withdrawal" will be deemed to have been made only at the earliest of the following times:

**(1)** When you first announced, in any manner, to the general public, your vendors or to your employees (other than those employees directly involved in making the determination) your decision to conduct or participate in a "product withdrawal". This applies regardless of whether the determination to conduct a "product withdrawal" is made by you or is requested by a third party; or

**(2)** When you first received, either orally or in writing, notification of an order from an authorized government entity to conduct a "product withdrawal".

**e.** "Product withdrawal expenses" incurred to withdraw "your products" which contain the same or substantially similar "defects" will be deemed to have arisen out of the same "product withdrawal".

## 2. Exclusions

This insurance does not apply to "product withdrawal expenses" arising out of:

**a. Breach Of Warranty And Failure To Conform To Intended Purpose**

Any "product withdrawal" initiated due to the failure of "your product" to accomplish its intended purpose, including any breach of warranty of fitness, whether written or implied. This exclusion does not apply if such failure has caused or is reasonably expected to cause "bodily injury" or physical damage to tangible property other than "your product".

**b. Infringement Of Copyright, Patent, Trade Secret, Trade Dress Or Trademark**

Any "product withdrawal" initiated due to copyright, patent, trade secret, trade dress or trademark infringements.

**c. Deterioration, Decomposition Or Chemical Transformation**

Any "product withdrawal" initiated due to transformation of a chemical nature, deterioration or decomposition of "your product". This exclusion does not apply if it is caused by:

**(1)** An error in manufacturing, design, or processing;

**(2)** Transportation of "your product"; or

**(3)** "Product tampering".

**d. Goodwill, Market Share, Revenue, Profit Or Redesign**

The costs of regaining goodwill, market share, revenue or "profit" or the costs of redesigning "your product".

**e. Expiration Of Shelf Life**

Any "product withdrawal" initiated due to expiration of the designated shelf life of "your product".

**f. Known Defect**

A "product withdrawal", initiated because of a "defect" in "your product" known to exist by the Named Insured or the Named Insured's "executive officers", prior to the date when this Coverage Part was first issued to you or prior to the time "your product" leaves your control or possession.

**g. Otherwise Excluded Products**

A recall of any specific products for which "bodily injury" or "property damage" is excluded under Coverage **A** – Bodily Injury And Property Damage Liability by endorsement.

**h. Governmental Ban**

A recall when "your product" or a component contained within "your product" has been:

**(1)** Banned from the market by an authorized government entity prior to the policy period; or

**(2)** Distributed or sold by you subsequent to any governmental ban.

**i. Defense Of Claim**

The defense of a claim or "suit" against you for liability arising out of a "product withdrawal".

**j. Third-party Damages, Fines And Penalties**

Any compensatory damages, fines, penalties, punitive or exemplary or other noncompensatory damages imposed upon the insured.

**k. Pollution-related Expenses**

Any loss, cost or expense due to any:

**(1)** Request, demand, order, statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**B.** For the purposes of this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

**Section III – Limits Of Insurance**

1. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** "Product withdrawals" initiated; or

   **c.** Number of "your products" withdrawn.

2. The Aggregate Limit is the most we will reimburse you for the sum of all "product withdrawal expenses" incurred for all "product withdrawals" initiated during the policy period.

3. **Deductible And Participation Percentage Provisions**

   **a. Deductible**

   We will only pay for the amount of "product withdrawal expenses" which are in excess of the deductible amount, if any, shown in the Schedule of this endorsement. The deductible applies separately to each "product withdrawal". The limits of insurance will not be reduced by the amount of this deductible.

   We may, or will if required by law, pay all or any part of any deductible amount, if applicable. Upon notice of our payment of a deductible amount, you shall promptly reimburse us for the part of the deductible amount we paid.

   **b. Participation Percentage**

   If a Participation Percentage is indicated in the Schedule of this endorsement, the following provision applies:

   You agree to participate in the payment of "product withdrawal expenses" which are in excess of the Deductible, to the extent of the Participation Percentage indicated in the Schedule. The Participation Percentage will apply separately to each "product withdrawal".

   You also agree that the cost of your participation in each "product withdrawal" will be borne entirely by you when due and you will not obtain insurance to cover it.

The Limits of Insurance of Product Withdrawal Expense Coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**C.** For the purposes of this endorsement, the **Duties In The Event Of Occurrence, Claim Or Suit** Condition under **Section IV – Conditions** is replaced by the following:

2. **Duties In The Event Of A "Defect" Or A "Product Withdrawal"**

   **a.** You must see to it that we are notified as soon as practicable of any actual, suspected or threatened "defect" in "your product", or any governmental investigation, that may result in a "product withdrawal". To the extent possible, notice should include:

      **(1)** How, when and where the "defect" was discovered;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature, location and circumstances of any injury or damage arising out of use or consumption of "your product".

   **b.** If a "product withdrawal" is initiated, you must:

      **(1)** Immediately record the specifics of the "product withdrawal" and the date it was initiated; and

      **(2)** Notify us as soon as practicable.

      You must see to it that we receive written notice of the "product withdrawal" as soon as practicable.

   **c.** You must promptly take all reasonable steps to mitigate the expenses associated with a "product withdrawal". Any "profit" that you receive from mitigating the expenses will be deducted from the amount of reimbursement that you will receive for "product withdrawal expenses".

d.  You and any other involved insured must:

    (1)  Immediately send us copies of pertinent correspondence received in connection with the "product withdrawal";

    (2)  Authorize us to obtain records and other information; and

    (3)  Cooperate with us in our investigation of the "product withdrawal".

**D.**  For the purposes of this endorsement, the following condition is added to **Section IV – Conditions:**

**Concealment Or Fraud**

We will not provide coverage under Section **I** of this endorsement to you, or any other insured, who at any time:

1.  Engaged in fraudulent conduct; or

2.  Intentionally concealed or misrepresented a material fact concerning a "product withdrawal" or "product withdrawal expenses" incurred by you under Section **I** of this endorsement.

**E.**  The following definitions are added to the **Definitions** section:

1.  "Defect" means a defect, deficiency or inadequacy that creates a dangerous condition.

2.  "Product tampering" is an act of intentional alteration of "your product" which has caused or is reasonably expected to cause "bodily injury" or physical injury to tangible property other than "your product".

    When "product tampering" is known, suspected or threatened, a "product withdrawal" will be limited to those batches of "your product" which are known or suspected to have been tampered with.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

3.  "Product withdrawal" means the recall or withdrawal:

    a.  From the market; or

b.  From use by any other person or organization;

of "your products", or products which contain "your products", because of known or suspected "defects" in "your product", or known or suspected "product tampering", which has caused or is reasonably expected to cause "bodily injury" or physical injury to tangible property other than "your product".

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

4.  "Product withdrawal expenses" means those reasonable and necessary extra expenses, listed below, paid and directly related to a "product withdrawal":

    a.  Costs of notification;

    b.  Costs of stationery, envelopes, production of announcements and postage or facsimiles;

    c.  Costs of overtime paid to your regular nonsalaried employees and costs incurred by your employees, including costs of transportation and accommodations;

    d.  Costs of computer time;

    e.  Costs of hiring independent contractors and other temporary employees;

    f.  Costs of transportation, shipping or packaging;

    g.  Costs of warehouse or storage space; or

    h.  Costs of proper disposal of "your products", or products that contain "your products", that cannot be reused, not exceeding your purchase price or your cost to produce the products.

5.  "Profit" means the positive gain from business operation after subtracting for all expenses.

Policy Number: CA000025982-03                                                         **CG 21 06 05 14**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

    **2.  Exclusions**

        This insurance does not apply to:

        **p.  Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

            Damages arising out of:

            **(1)**  Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

            **(2)**  The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

            This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

            However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

            As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

    **2.  Exclusions**

        This insurance does not apply to:

        **Access Or Disclosure Of Confidential Or Personal Information**

        "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

        This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Policy Number: CA000025982-03 **CG 21 49 09 99**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Policy Number: CA000025982-03      **CG 21 75 01 15**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory".  However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars).  In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property.  For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury.  For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**CG 21 75 01 15**      © Insurance Services Office, Inc., 2015      **Page 1 of 2**    ☐

**B.** The following definitions are added:

    **1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

    **2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

        **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

        **b.** The act resulted in damage:

            **(1)** Within the United States (including its territories and possessions and Puerto Rico); or

            **(2)** Outside of the United States in the case of:

                **(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

                **(b)** The premises of any United States mission; and

        **c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

    **3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

    Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Policy Number: CA000025982-03                                         **CG 24 26 04 13**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**CG 24 26 04 13**                © Insurance Services Office, Inc., 2012                  **Page 1 of 1**    ☐

Policy Number: CA000025982-03

**COMMERCIAL GENERAL LIABILITY**
**CG 24 50 06 15**

# LIMITED COVERAGE FOR DESIGNATED UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Description Of Unmanned Aircraft |
|---|
| 1.  Any "unmanned aircraft" operated under a FAA Section 333 Exemption. |
| 2.  Any "unmanned aircraft" weighing less than 4.4 pounds and operated under FAA Part 107 Rules. |
| 3.  Any "unmanned aircraft" that: |
|     a.  Weighs less than 4.4 pounds; and |
|     b.  Is operated at least 5 nautical miles away from an airport or heliport having an operational control tower or published instrument flight procedure; and |
|     c.  Is operated at least 5 nautical miles away from a military base or national park; and |
|     d.  Is operated at an altitude below 400 feet; and |
|     e.  Is manually flown within the unaided (other than corrective lenses) visual line of sight of the remote pilot in command or the person manipulating the flight controls of the "unmanned aircraft". |
| 4.  Any other "unmanned aircraft" endorsed to this policy. |

| Description Of Operation(s) Or Project(s) |
|---|
| Operations directly related to the Business Description shown in the Declarations. |

| Limit Of Insurance | |
|---|---|
| Unmanned Aircraft Liability Aggregate Limit:    $ | Paragraph **C.** below does not apply.<br>Please refer to **Section III – Limits of Insurance**. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2.  Exclusions**

This insurance does not apply to:

**g.  Aircraft, Auto Or Watercraft**

**(1)  Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This Paragraph **g.(1)** does not apply to "unmanned aircraft" described in the Schedule, but only with respect to the operation(s) or project(s) described in the Schedule.

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(e)** "Bodily injury" or "property damage" arising out of:

**(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(ii)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Unmanned Aircraft**

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

**a.** The use of another's advertising idea in your "advertisement";

**b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

**c.** "Unmanned aircraft" described in the Schedule, but only with respect to the operation(s) or project(s) described in the Schedule.

**C.** If an Unmanned Aircraft Liability Aggregate Limit is shown in the Schedule, the following provisions are added to **Section III – Limits Of Insurance:**

**1.** Subject to Paragraph **2.** or **3.** of **Section III – Limits Of Insurance,** whichever applies, the Unmanned Aircraft Liability Aggregate Limit shown in the Schedule is the most we will pay for the sum of:

**a.** Damages under Coverage **A;**

**b.** Damages under Coverage **B;** and

    **c.**   Medical expenses under Coverage **C**;

because of all "bodily injury", "property damage" and "personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

  **2.**  Paragraph **4.**, the Personal And Advertising Injury Limit, Paragraph **5.**, the Each Occurrence Limit, Paragraph **6.**, the Damage To Premises Rented To You Limit, and Paragraph **7.**, the Medical Expense Limit, of **Section III – Limits Of Insurance** continue to apply to "bodily injury", "property damage" and "personal and advertising injury", as applicable, arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft" but only if, and to the extent that, a limit of insurance is available under the Unmanned Aircraft Liability Aggregate Limit.

**D.**  The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.**  Designed;

**2.**  Manufactured; or

**3.**  Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

Policy Number: CA000025982-03                                    **IL 00 21 07 02**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY ENDORSEMENT (BROAD FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.**   The insurance does not apply:

**A.**   Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)**   With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)**   Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.**   Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.**   Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)**   The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)**   The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)**   The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.**  As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)**  Any "nuclear reactor";

**(b)**  Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)**  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)**  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc.,  2001

Policy Number: CA000025982-03                                          **AD 08 42 02 16**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BODILY INJURY REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION)
COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CLAIMS-MADE)
PRODUCTS AND COMPLETED OPERATIONS LIABILITY COVERAGE FORM (OCCURRENCE VERSION)
PRODUCTS AND COMPLETED OPERATIONS LIABILITY COVERAGE FORM (CLAIMS-MADE VERSION)
LIQUOR LIABILITY COVERAGE (OCCURRENCE VERSION)
LIQUOR LIABILITY COVERAGE (CLAIMS-MADE)
OWNER'S AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
EXCESS LIABILITY COVERAGE FORM
UMBRELLA LIABILITY COVERAGE FORM

The definition of "bodily injury" in DEFINITIONS is amended as follows:

"Bodily injury" means physical injury, physical sickness or physical disease sustained by any one person, including death resulting from any of these at any time.  "Bodily injury" does not include shock or emotional, mental or psychological distress, injury, trauma or anguish, or other similar condition, unless such condition results solely and directly from that one person's prior physical injury, physical sickness or physical disease otherwise covered under this insurance.

**AD 08 42 02 16**           Includes copyrighted material of Insurance Services Office, Inc.,           **Page 1 of 1**   ▫
                                                   with its permission, 2016.

Policy Number: CA000025982-03

**AD 66 09 02 95**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM PREMIUM AND MINIMUM RETAINED PREMIUM AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

1. Condition 5.  Premium Audit as shown in SECTION IV- CONDITIONS is deleted and replaced by the following condition:

    5.   Premium Audit

    All premiums for this policy shall be computed in accordance with our rules, rates, rating plans, premiums and minimum premiums applicable to the Insurance afforded herein.

    Premium designated in this policy as Advance Premium is a Deposit Premium which shall be credited to the amount of the earned premium due at the end of the policy period.  At the close of each period (or part thereof terminating with the end of policy period), designated in the DECLARATIONS as the audit period, the earned premium shall be computed for such period and, upon notice thereof to the first Named Insured, shall become due and payable.

    Should it become necessary to institute collection activities, including litigation, in order to collect the additional earned premium, then you shall be responsible for 100% of the expenses, fees and costs incurred by the Company in that regard plus any collectible interest.  If the total computed earned premium for the policy period is less than the premium previously paid, then we shall receive and retain no less than the minimum premium(s) listed in the coverage part(s) attached hereto.

    You shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to us at the end of the policy period and at such times during the policy period as we may direct.

2. It is further agreed that Section A. Cancellation, paragraph 5. of the COMMON POLICY CONDITIONS IS amended to read as follows:

    5.   If the policy is cancelled, we will send the first Named Insured any premium refund due.

    **If we cancel, the refund will be the lesser of the pro rata of the actual earned premium or Minimum Premium.  If the Named Insured cancels, the refund may be less than pro rata. However in no event shall we retain less than 25% of the Advance Premium shown in the DECLARATIONS.**

Policy Number: CA000025982-03                                        **AD 66 11 05 11**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE
# (APPLICABLE TO INDEMNITY AND EXPENSES)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | | | |
|---|---|---|---|---|
| | | **PER CLAIM** | | **PER OCCURRENCE** |
| Bodily Injury Liability | $ | | $ | |
| Property Damage Liability | $ | | $ | |
| Bodily Injury Liability and/or Property Damage Liability Combine | $ | | $ | $2,500.00 |
| Personal and Advertising Injury Liability | $ | | $ | $2,500.00 |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT**  (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all "bodily injury", "property damage" and "personal and advertising injury", however caused.  Damages includes any payments made under the Supplementary Payments provisions of this policy including, but not limited to, expenses we incur to investigate or settle a claim or to defend a "suit".):

> **No limitations**

1. Our obligation under the Bodily Injury Liability, Property Damage Liability, and Personal and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

   Damages includes any payments made under the Supplementary Payments provisions of this policy including, but not limited to, expenses we incur to investigate or settle a claim, or to defend a "suit".

2. The deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

   a. PER CLAIM BASIS.  If the deductible amount indicated in the Schedule above is on a PER CLAIM basis, that deductible applies as follows:

**(1)** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

**(2)** Under Personal and Advertising Injury Liability Coverage, to all damages sustained by any one person because of "personal and advertising injury";

**(3)** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**(4)** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

**(a)** "Bodily injury";

**(b)** "Property damage"; or

**(c)** "Bodily injury" and "property damage" combined as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage" and "personal and advertising injury", person includes an organization.

**b.** PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a PER OCCURRENCE basis, that deductible amount applies as follows:

**(1)** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

**(2)** Under Personal and Advertising Injury Liability Coverage, to all damages sustained by any one person because of "personal and advertising injury";

**(3)** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

**(4)** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

**(a)** "Bodily injury";

**(b)** "Property damage"; or

**(c)** "Bodily injury" and "property damage" combined,

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**3.** The terms of this insurance, including those with respect to:

**a.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**b.** Your duties in the event of an "occurrence", claim, or "suit";

apply irrespective of the application of the deductible amount.

**4.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**5.** When used in this endorsement, damages include any payments made under the Supplementary Payments provisions of this policy including, but not limited to, expenses we incur to investigate or settle a claim or to defend a "suit".

**6.** If you do not promptly reimburse us for any deductible amount owed, then any cost incurred by us in collection of the deductible amount will be added and applied in addition to the applicable deductible amount without any limitation. These costs include, but are not limited to, collection agency fees, attorney's fees and interest.

Policy Number: CA000025982-03                                **AD 66 14 09 09**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Designated Product(s):**

RV storage tanks and polyethylene shell spas

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to the "products-completed operations hazard", this insurance applies only to "bodily injury" or "property damage" caused by "your product" shown in the Schedule.

**AD 66 14 09 09**                                                                    Page 1 of 1   ☐

Policy Number: CA000025982-03 **AD 68 83 04 13**

Effective Date: 12/21/2018

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# LONG TERM EXPOSURE EXCLUSIONS – JOINT FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

## ASBESTOS EXCLUSION (ABSOLUTE)

This insurance does not apply to liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal and advertising injury" including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of the mining, manufacturing, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, testing for or failure to disclose the presence of asbestos, products containing asbestos, or products designed or used to protect from the inhalation, ingestion, contact with or other exposure to asbestos whether or not the asbestos is or was at any time airborne as a fume, dust, powder, fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to any loss, cost or expense including but not limited to, payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of or related to any:

**(1)** Clean up or removal of asbestos or products and materials containing asbestos;

**(2)** Such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of asbestos or products and material containing asbestos;

**(3)** Disposal of asbestos substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

**(4)** Compliance with any law or regulation regarding asbestos;

**(5)** Existence, storage, handling or transportation of asbestos;

**(6)** Any supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.

## LEAD EXCLUSION (ABSOLUTE)

This insurance does not apply to liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal and advertising injury" including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of the mining, manufacturing, distribution, sale, resale,

rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of or testing for or failure to disclose the presence of lead, products containing lead, or products designed or used to protect from the inhalation, ingestion, contact with or other exposure to lead, whether or not the lead is or was at any time airborne as a fume, dust, powder, fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to any loss, cost or expense, including but not limited to payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of or related to any:

**(1)** Clean up or removal of lead or products and materials containing lead;

**(2)** Such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of lead or products and material containing lead;

**(3)** Disposal of lead substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

**(4)** Compliance with any law or regulation regarding lead;

**(5)** Existence, storage, handling or transportation of lead;

**(6)** Any supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.

## MICROORGANISMS, BIOLOGICAL ORGANISMS OR ORGANIC CONTAMINANTS EXCLUSION (GENERAL LIABILITY BROAD FORM)

This insurance does not apply to:

**(1)** Liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or " personal and advertising injury", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust, or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion; or

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal injury and advertising injury" to which this endorsement applies.

# SILICA EXCLUSION (ABSOLUTE)

This insurance does not apply to liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal and advertising injury" including costs or expenses, actually or allegedly arising out of, related to , caused by, contributed to by, or in any way connected with actual, alleged, or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of the mining, manufacturing, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of, testing for or failure to disclose the presence of, failure to warn or advise of silica, products containing silica, or products designed or used to protect from the inhalation, ingestion, contact with or any other exposure to silica, whether or not the silica is or was at any time airborne as a fume, dust, powder, fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to any loss, cost or expense including, but not limited to, payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of or related to any:

**(1)** Clean up or removal of silica or products and materials containing silica;

**(2)** Such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of silica or products and material containing silica;

**(3)** Disposal of silica substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

**(4)** Compliance with any law or regulation regarding silica;

**(5)** Existence, storage, handling or transportation of silica;

**(6)** Any supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.

# ELECTROMAGNETIC RADIATION EXCLUSION (ABSOLUTE)

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury", including costs or expenses, arising out of, related to, caused by, contributed to by, or in any way connected with the actual or alleged exposure to, presence of, formation of or existence of "electromagnetic radiation";

**2.** Any loss, claim, "suit", cost or expense arising out of any request, demand, order, statutory, regulatory or governmental requirement that any insured or others for whom any insured is legally liable, test for, comply with standards for, monitor, clean up, remove, contain, treat, detoxify, neutralize, abate, mitigate or in any way respond to or assess the effects of "electromagnetic radiation";

**3.** Any loss, claim, "suit", cost or expense, including but not limited to fines or penalties, arising out of any failure to comply with any statutory, regulatory or governmental standards concerning acceptable levels of "electromagnetic radiation";

**4.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Paragraphs 1., 2. or 3. above; or

**5.** Any obligation to share damages with or repay anyone else who must pay damages in connection with Paragraphs 1., 2., 3. or 4. above.

"Electromagnetic radiation" means any form of electrical and magnetic energy, or electric and magnetic field(s) within the electromagnetic spectrum, whether naturally occurring or artificially created, regardless of source, and includes, but is not limited to, radio frequency radiation.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.

Policy Number: CA000025982-03

**AD 69 37 10 15**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MANUFACTURERS AND DISTRIBUTORS ENHANCED COVERAGE

## (Commercial General Liability Coverage Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## I.  AMENDED EXCLUSIONS

### NON-OWNED WATERCRAFT COVERAGE - Up to 55 feet

**SECTION I – COVERAGES –** COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Exclusion **g.** Aircraft, Auto or Watercraft is deleted in its entirety and replaced by the following:

(2)  A watercraft you do not own that is:

    (a)  Less than 55 feet long; and

    (b)  Not being used to carry persons or property for a charge;

### MEDICAL PAYMENTS – PRODUCTS-COMPLETED OPERATIONS HAZARD

**SECTION I – COVERAGES –** COVERAGE C – MEDICAL PAYMENTS Exclusion **f.** Products-Completed Operations Hazard is deleted in its entirety.

## II.  AMENDED COVERAGES

### KNOWLEDGE OF OCCURRENCE

The following paragraph is added to Section IV – Commercial General Liability Conditions Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim or Suit:

Notice of an "occurrence" which may result in a claim under this insurance shall be given as soon as practicable after knowledge of the "occurrence" has been reported to you, one of your "executive officers", or any "employee" authorized by you to give or receive notice of an "occurrence".

### UNINTENTIONAL ERRORS AND OMISSIONS

The following paragraph is added to Section IV – Commercial General Liability Conditions Paragraph **6.** Representations:

However, the unintentional omission of, or unintentional error in, any information given or provided by you shall not prejudice your rights under this insurance.  However, this provision does not affect our right to collect additional premium or to exercise our right of cancellation or non-renewal.

## III.  ADDED COVERAGES

### PRODUCT DESIGN COVERAGE

It is agreed "your product" includes "engineering and design work" performed by you and which is incorporated by you into "your product"; however, this insurance does not apply to:

    **(1)**  "Engineering and design work" performed by others on your behalf; or

    **(2)**  "Engineering and design work" performed by you for others.

For the purposes of this endorsement, "engineering and design work" means the making, drawing, planning, drafting, formulating or developing of a plan, specification or formula.

## PRIMARY AND NONCONTRIBUTORY –
## OTHER INSURANCE CONDITION

### (Insurance Services Office Endorsement CG 20 01 04 13)

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

    **(1)**  The additional insured is a Named Insured under such other insurance; and

    **(2)**  You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

## PRIMARY/NONCONTRIBUTING INSURANCE ENDORSEMENT - VENDORS

It is agreed that Section **IV** Paragraphs **4.b.** and **4.c.** do not apply with respect to other valid and collectible Products/Completed Operations Liability insurance or Commercial General Liability including Products/Completed Operations Liability insurance, whether primary or excess, available to the person or organization:

**1.**  Who is an insured under an Additional Insured-Vendors endorsement attached to this policy; and

**2.**  Who is shown in the endorsement Schedule; and

**3.**  Who requires by specific written contract prior to the occurrence that this insurance is to be primary and/or non-contributory to other valid and collectible insurance available to that person or organization.

This amendment does not change the scope of coverage provided to the person or organization by any additional insured endorsement.

## WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

### (Insurance Services Office Endorsement CG 24 04 05 09)

### SCHEDULE

| |
|---|
| **Name Of Person Or Organization:** |
|        Any person or organization, but only if the following conditions are met: |
|   (1)  You have expressly agreed to the waiver in a written contract; and |
|   (2)  The injury or damage first occurs subsequent to the execution of the written contract. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

## WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST VENDORS TO US

### SCHEDULE

| |
|---|
| **Name of Person or Organization:**        Any person or organization that is a vendor of "your product", but only if coverage as an additional insured is required by a written contract or written agreement that is an "insured contract", and provided the "bodily injury" or "property damage" first occurs, or the "personal and advertising injury" offense is first committed, subsequent to the execution of the contract or agreement. |
| If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of "your product" sold under a written contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above, but the waiver does not apply if the person or organization:

**a.** Makes any physical or chemical change in the product;

**b.** Repackages, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**c.** Fails to make such inspections, adjustments, tests or servicing as the person or organization has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**d.** Demonstrates, installs, services, or repairs the product except such operations performed at the person's or organization's premises in connection with the sale of the product; or

**e.** Re-labels the product.

This waiver does not apply to any person or organization from whom you have acquired such products, or any ingredient, part or container entering into, accompanying or containing such products.

## IV.   <u>ADDITIONAL INSUREDS</u>

### ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT –
### AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU
#### (Insurance Services Office Endorsement CG 20 34 04 13)

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) from whom you lease equipment when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person(s) or organization(s) is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.**  With respect to the insurance afforded to these additional insureds, the following is added **to Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.**  Required by the contract or agreement you have entered into with the additional insured; or

**2.**  Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

## ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

### (Insurance Services Office Endorsement CG 20 11 04 13)

### SCHEDULE

| |
|---|
| **Designation Of Premises (Part Leased To You):** |
| All premises leased to you. |

| |
|---|
| **Name Of Person(s) Or Organization(s) (Additional Insured):** |
| Any person or organization that is a manager or lessor of real property, but only if coverage as an additional insured is required by a written contract or written agreement that is an "insured contract", and provided the "bodily injury" or "property damage" first occurs, or the "personal and advertising injury" offense is first committed, subsequent to the execution of the contract or agreement. |

| |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.**  **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.**  Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.**  Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.**  The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.**  If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.**  With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.**  Required by the contract or agreement; or

**2.**  Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

## ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

### (Insurance Services Office Endorsement CG 20 18 04 13)

### SCHEDULE

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Any person or organization that is a mortgagee, assignee or receiver for a premises shown in this Schedule, but only if coverage as an additional insured is required by a written contract or written agreement that is an "insured contract", and provided the "bodily injury" or "property damage" first occurs, or the "personal and advertising injury" offense is first committed, subsequent to the execution of the contract or agreement. | All premises covered by this insurance. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

## ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS –
## SCHEDULED PERSON OR ORGANIZATION
### (Insurance Services Office Endorsement CG 20 10 04 13)

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| Any person or organization that is an owner of real property or personal property on which you are performing ongoing operations, or a contractor on whose behalf you are performing ongoing operations, but only if coverage as an additional insured is required by a written contract or written agreement that is an "insured contract", and provided the "bodily injury" or "property damage" first occurs, or the "personal and advertising injury" offense is first committed, subsequent to the execution of the contract or agreement. | All locations at which you are performing ongoing operations. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

   **1.** Your acts or omissions; or

   **2.** The acts or omissions of those acting on your behalf;

   in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

   However:

   **1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

   **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

   This insurance does not apply to "bodily injury" or "property damage" occurring after:

   **1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   **2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

   If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

   **1.** Required by the contract or agreement; or
   **2.** Available under the applicable Limits of Insurance shown in the Declarations;

   whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

## ADDITIONAL INSURED – TRADE SHOW SPONSOR –
## AUTOMATIC STATUS WHEN REQUIRED IN WRITTEN AGREEMENT WITH YOU

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization who is a sponsor of a trade show where you are operating a booth or displaying your product, but only:

  1. For injury or damage occurring at the trade show; and

  2. When you and such person or organization have agreed in writing in a contract or agreement executed prior to the beginning of the trade show that such person or organization be added as an additional insured on your policy.

Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

  1. Your acts or omissions; or

  2. The acts or omissions of those acting on your behalf;

while attending the trade show sponsored by this additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your attendance at the trade show ends.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury" or "property damage" arising out of "your work" or "your product" and included in the "products-completed operations hazard".

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

  1. Required by the contract or agreement; or

  2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

## ADDITIONAL INSURED – VENDORS

### (Insurance Services Office Endorsement CG 20 15 04 13)

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| Any person or organization that is a vendor of "your product", but only if coverage as an additional insured is required by a written contract or written agreement that is an "insured contract", and provided the "bodily injury" or "property damage" first occurs, or the "personal and advertising injury" offense is first committed, subsequent to the execution of the contract or agreement. | All products that are covered by this insurance. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.   Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

1.   The insurance afforded to such vendor only applies to the extent permitted by law; and

2.   If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.   With respect to the insurance afforded to these vendors, the following additional exclusions apply:**

1.   The insurance afforded the vendor does not apply to:

   **a.**   "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   **b.**   Any express warranty unauthorized by you;

   **c.**   Any physical or chemical change in the product made intentionally by the vendor;

   **d.**   Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   **e.**   Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   **f.**   Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   **g.**   Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

   **h.**   "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

      **(1)**   The exceptions contained in Sub-paragraphs **d.** or **f.**; or

      **(2)**   Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

2.   This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.   With respect to the insurance afforded to these vendors, the following is added to Section III – Limits Of Insurance:**

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

1.   Required by the contract or agreement; or

2.   Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Policy Number: CA000025982-03                                    **AD 69 39 10 15**

Effective Date: 12/21/2018

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SWING PREMIUM AND PREMIUM AUDIT WAIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILIT COVERAGE FORM

Paragraph 1. of MINIMUM PREMIUM AND MINIMUM RETAINED PREMIUM AMENDATORY ENDORSEMENT AD 66 09 02 95 is deleted in its entirety and replaced by the following:

1.  Condition 5. Premium Audit as shown in SECTION IV- CONDITIONS is deleted and replaced by the following condition:

    **5.**  Premium Audit

    All premiums for this policy shall be computed in accordance with our rules, rates, rating plans, premiums and minimum premiums applicable to the Insurance afforded herein.

    Premium designated in this policy as Total Advance Premium is a Deposit Premium which shall be credited to the amount of the Earned Premium due at the end of the policy period.  At the close of each period (or part thereof terminating with the end of policy period) designated in the DECLARATIONS as the audit period, the Earned Premium shall be computed for such period.

    If the Earned Premium is greater than the Total Advance Premium, we will waive an amount equal to the lesser of the following amounts:

    **a.**  The difference between the Earned Premium and the Total Advance Premium; or
    **b.**  Ten percent of the Total Advance Premium.

    Upon notice to the first Named Insured, the amount due to us shall become due and payable.

    If the Earned Premium is less than the Total Advance Premium, we will return an amount equal to the lesser of the following amounts to the first Named Insured:

    **a.**  The difference between the Earned Premium and the Total Advance Premium; or
    **b.**  Ten percent of the Total Advance Premium.

    Should it become necessary to institute collection activities, including litigation, in order to collect the additional Earned Premium, then you shall be responsible for 100% of the expenses, fees and costs incurred by the Company in that regard plus any collectible interest.

    You shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to us at the end of the policy period and at such times during the policy period as we may direct.

Policy Number: CA000025982-03                                          **AD 66 66 09 09**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIFIED OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Specified Ongoing and/or Completed Operation(s):**

Installation for you or by you

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the operations designated in the Schedule.  This exclusion applies whether the operations are or were performed by you or on your behalf or whether the operations are ongoing or have been completed by you or on your behalf.

Policy Number: CA000025982-03                                    **AD 68 88 12 13**

Effective Date: 12/21/2018

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL EXCLUSIONS – JOINT FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION)

## PRE-EXISTING DAMAGE EXCLUSION

It is agreed under **Section 1 Coverages, Coverage A Bodily Injury** and **Property Damage Liability, 1. Insuring Agreement**, Paragraphs **b (3), c** and **d** are deleted in their entirety and the following exclusion is added to this policy:

This insurance does not apply to:

1. Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

   (a) which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

   (b) which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this policy period.

2. Any damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier).

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

   This insurance does not apply to:

   "Bodily injury" to:

   (1) A person arising out of any "wrongful employment act(s)"; or

   (2) The spouse, child, parent, brother, sister or registered domestic partner of that person as a consequence of "bodily injury" to that person at whom any of the "wrongful employment act(s)" described in Paragraph **(1)** above is directed.

   This exclusion applies:

   (1) Whether any insured may be liable as an employer or in any other capacity;

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

   (3) Whether the "wrongful employment act(s)" occurs before employment, during employment or after employment of that person.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to:

"Personal and advertising injury" to:

    **(1)** A person arising out of any "wrongful employment act(s)"; or

    **(2)** The spouse, child, parent, brother, sister or registered domestic partner of that person as a consequence of "personal and advertising injury" to that person at whom any of the "wrongful employment act(s)" described in Paragraph **(1)** above is directed.

This exclusion applies:

    **(1)** Whether any insured may be liable as an employer or in any other capacity;

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

    **(3)** Whether the "wrongful employment act(s)" occurs before employment, during employment or after employment of that person.

**C.** Additional Definitions:

    **(1)** "Wrongful employment act(s)" means any of the following actual, alleged or related acts committed by or on behalf of any insured arising out of a potential, actual or post employment relationship with any person:

        **(a)** Discrimination or harassment because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation, marital status, or any other basis prohibited by law which results in termination of the employment relationship, or demotion, or failure or refusal to hire or promote, or failure to accommodate an "employee" or potential "employee", or denial of an employment privilege, or the taking of any adverse or differential employment action; or

        **(b)** Sexual harassment including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature that is made a condition of employment, is used as a basis for employment decisions, or creates an intimidating, hostile or offensive work environment that interferes with work performance; or

        **(c)** Termination, constructive discharge, wrongful failure to hire, wrongful demotion, retaliation, misrepresentation, infliction of emotional distress, defamation, invasion of privacy, humiliation, wrongful evaluation, or breach of an implied contract or agreement relating to employment, whether arising out of any personnel manual, policy statement or oral representation; or

        **(d)** Physical assault or battery, or any other similar behavior that creates an intimidating, hostile, offensive or dangerous work environment; or

        **(e)** Training or failing to train any "employee" in accordance with any applicable federal, state or local law, regulation, ordinance, rule, guidance document or policy directive governing any act described in Paragraph **C. (1) (a)** through Paragraph **C. (1) (d)** above; or

        **(f)** Failure to comply with any applicable federal, state or local law, regulation, ordinance, rule, guidance document or policy directive related to the prevention of any act described in Paragraph **C. (1) (a)** through Paragraph **C. (1) (d)** above; or

        **(g)** malicious prosecution.

Policy Number: CA000025982-03 **AD 67 48 05 11**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INTELLECTUAL PROPERTY EXCLUSION
### (AMENDED DEFINITION OF PERSONAL AND ADVERTISING INJURY)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**I.** SECTION **I** – COVERAGES – COVERAGE **B** PERSONAL AND ADVERTISING INJURY LIABILITY Exclusion **i.** is deleted in its entirety and replaced by the following:

**i.** "Personal and advertising injury" arising out of:

**(1)** Any infringement, disparagement, dilution or diminution of or damage to:

**(a)** Copyright, slogan or title;

**(b)** Patent;

**(c)** Trademark, service mark, service name, collective mark or certification mark, including without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service;

**(d)** Trade secret or practice;

**(e)** Trade dress, including without limitation any shape, color, design or appearance used to distinguish the origin of a good, product or service;

**(f)** Advertising ideas, concepts, campaigns, or style of doing business; or

**(g)** Any other proprietary property rights or intellectual property rights recognized or implied by law.

**(2)** Any false designation of the origin of a good, product or service.

**(3)** Any deceptive, false, fraudulent, misleading, unfair, unlawful or untrue business act or practice.

**II.** The definition of "personal and advertising injury" in the DEFINITIONS section of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is deleted in its entirety and replaced by the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

Policy Number: CA000025982-03                                    **AD 67 60 04 15**

Effective Date: 12/21/2018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PREMIUM BASIS DEFINITION – GROSS SALES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

When used as a Premium Basis, the following definition applies.

**Gross Sales**

1. **Definition**

   Gross Sales means the gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:

   a. All goods or products sold or distributed.

   b. Operations performed during the policy period.

   c. Rentals.

   d. Dues or fees.

2. **Inclusions**

   The following items shall not be deducted from gross sales:

   a. Foreign exchange discounts.

   b. Freight allowance to customers.

   c. Total sales of consigned goods and warehouse receipts.

   d. Trade or cash discounts.

   e. Bad debts.

   f. Repossession of items sold on installments (amount actually collected).

3. **Exclusions**

   The following items shall be deducted from gross sales:

   a. Sales or excise taxes which are collected and submitted to a governmental division.

   b. Credits for repossessed merchandise and products returned.  Allowances for damaged and spoiled goods.

   c. Finance charges for items sold on installments.

   d. Freight charges on sales if freight is charged as a separate item on customer's invoice.

   e. Royalty income from patent rights or copyrights which are not product sales.

   f. Rental receipts for products liability coverage only.

Policy Number: CA000025982-03  **AI 07 10 08 18**

Effective Date: 12/21/2018

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## SERVICE OF SUIT - CALIFORNIA

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other Officer specified for that purpose in the Statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the below named as the person to whom the said Officer is authorized to mail such process or a true copy thereof.

The Company may be sued upon any cause of action arising in the State of California upon any policy issued by it, or any evidence of insurance issued or delivered by a surplus lines broker, pursuant to the procedures of Sections 1610 to 1620 of the Insurance Code. Nothing herein shall constitute a selection or designation of forum, or a waiver of any of our rights to select a forum or court, including any of the federal courts of the United States.  This includes any right to commence an action in or remove or transfer an action to the United States District Court or any other court of competent jurisdiction, as permitted by law.

It is further agreed that service of process in such suit may be made upon Vivian Imperial, in care of CT Corporation System, 818 West Seventh St., Suite 930, Los Angeles, CA 90017 and that in any suit instituted against the Company upon this policy, it will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

# EXHIBIT "B"



**ADMIRAL** *INSURANCE GROUP, LLC.*          **Policyholder Message**

---

| | | | |
|---|---|---|---|
| Named Insured: | INCA PLASTICS MOLDING CO.,INC. DBA ECO SPAS | Policy Number: | GX000000241-03 |

Dear Policyholder:

Our Corporate Headquarters' and Northeast Regional Branch Office mailing address is:

> Admiral Insurance Company (A Berkley Company)
> Mt. Laurel Corporate Park
> 1000 Howard Blvd., Suite 300, P.O. Box 5430
> Mt. Laurel, NJ 08054

Our telephone number:

General:             (856) 429 – 9200

If you need to report a claim please direct it:

I.      By regular or overnight mail to;

> Admiral Insurance Company (A Berkley Company)
> Mt. Laurel Corporate Park
> 1000 Howard Blvd., Suite 300 P.O. Box 5430
> Mt. Laurel, NJ 08054
> Attention: New Claim
> **Clearly state it is a "NEW CLAIM".**

II.     By Email to;

> admclaims@admiralins.com
> Do not email claims to ANY claims individual

III.    By FAX to;

> Fax #: (856) 429-3630
> Attention: New Claim
> **Clearly state it is a "NEW CLAIM".**



# ADMIRAL INSURANCE COMPANY

### A Stock Company

## EXCESS LIABILITY POLICY

## THIS POLICY IS NOT OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

**THIS POLICY CONSISTS OF:**

- **DECLARATIONS**
- **EXCESS POLICY FORM**
- **SCHEDULE OF "UNDERLYING INSURANCE"**
- **APPLICABLE FORMS AND ENDORSEMENTS**

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
Secretary

_____
President and CEO

1000 Howard Blvd., Suite 300, P.O. Box 5430   Mt. Laurel, NJ 08054   Telephone (856) 429-9200  Facsimile (856) 429-8611

JX4622 (03/13)                    a W. R. Berkley Company

Policy Number: GX000000241-03



**A I 80 00 09 17**

Effective Date: 12/21/2018

**Named Insured:**    INCA PLASTICS MOLDING CO.,INC.
DBA ECO SPAS

## IMPORTANT – POLICYHOLDER NOTICES

**Form Intentionally Left Blank**

**ADMIRAL INSURANCE COMPANY**

A STOCK COMPANY



**COMMERCIAL EXCESS LIABILITY POLICY
DECLARATIONS**

**Policy No.:**   <u>**GX000000241-03**</u>

**Renewal/Rewrite of:**   <u>**GX000000241-02**</u>

| Named Insured and Mailing Address |
| --- |

INCA PLASTICS MOLDING CO., INC.
FUSION PACIFIC, INC.
DBA: ECO SPAS
17129 KOALA ROAD
ADELANTO, CA 92301

POLICY PERIOD: From   12/21/2018   to   12/21/2019   At 12:01 A.M. Standard Time at the address of the Named Insured as stated herein

In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

THE NAMED INSURED IS:   ☐ Individual;   ☐ Partnership;   ☑ Corporation;   ☐ Joint Venture;   ☐ LLC;   ☐ Other

AUDIT PERIOD:   ☐ Annual   ☐ Semi-Annual   ☐ Quarterly   ☐ Monthly   ☑ N/A

**LIMITS OF INSURANCE:**

Each Loss Event Limit:         $4,000,000

Policy Aggregate Limit:       $4,000,000

**PREMIUM:**

Advance Premium:

Terrorism Premium:

Total Premium:

**MINIMUM RETAINED PREMIUM:**

Company to retain no less than 25% of the Total Premium if the Insured cancels

**FORMS AND ENDORSEMENTS MADE A PART OF THIS POLICY AT INCEPTION:**

See Schedule of Forms AI 00 18 03 98

This policy is not binding unless countersigned by Admiral Insurance Company or its Authorized Representative.

Countersigned On:         01/15/2019

At:         Seattle, WA

By:         _____
                  Authorized Representative

DE 2027 0603

*a W. R. Berkley Company*

**ADMIRAL INSURANCE COMPANY**
COMMERCIAL EXCESS LIABILITY

Policy No.:  **GX000000241-03**

| SCHEDULE OF CONTROLLING UNDERLYING INSURANCE | | |
|---|---|---|
| **Commercial General Liability** | | |
| Company    **ADMIRAL INSURANCE COMPANY** | | |
| Minimum Applicable Limits of Insurance | | |
| General Aggregate | $ 2,000,000 | |
| (Other Than Products-Completed Operations Aggregate) | | |
| Products-Completed Operations Aggregate | $ 2,000,000 | |
| Each Occurrence | $ 1,000,000 | |
| Personal And Advertising Injury | $ 1,000,000 | |
| **Commercial Auto Liability** | | |
| Company    **LIBERTY MUTUAL INSURANCE** | | |
| Minimum Applicable Limits of Insurance | | |
| Any One Accident | $ 1,000,000 | |
| **Employers' Liability** | | |
| Company    **INSURANCE COMPANY OF THE WEST** | | |
| Minimum Applicable Limits of Insurance | | |
| Bodily injury by accident | $ 1,000,000 | Each Accident |
| Bodily injury by disease | $ 1,000,000 | Each Employee |
| Bodily injury by disease | $ 1,000,000 | Policy Limit |
| This insurance does not apply to "injury or damage" caused by a "loss event" covered under Employer's Liability "controlling underlying insurance" in any jurisdiction where such insurance is or is required to be unlimited | | |

DE 20 28 06 03

# SCHEDULE OF FORMS

**Named Insured:**   INCA PLASTICS MOLDING CO.,INC.          **Policy No.:** GX000000241-03
DBA ECO SPAS

| FORM NUMBER | TITLE |
|---|---|
| JX46220313 | COVER JACKET ADMIRAL EXCESS |
| DE20270603 | EXCESS LIABILITY POLICY DECLARATIONS |
| DE20280603 | EXCESS SCHEDULE OF "UNDERLYING INSURANCE" |
| AI00180398 | SCHEDULE OF FORMS |
| EX46410416 | COMMERCIAL EXCESS LIABILITY COVERAGE FORM |
| EX50460115 | CONDITIONAL EXCLUSION OF TERRORISM RELATED TO DISPOSITION OF FEDERAL  TERRORISM RISK INSURANCE ACT |
| EX51040818 | SERVICE OF SUIT |

# COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The first "Named Insured" is the person or organization first named in the Declarations and is responsible for the payment of all premiums. The first "Named Insured" will act on behalf of all other "Named Insureds" for giving and receiving notices of cancellation and for receiving any return premium that may become payable.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **IV** - Definitions and relevant references in the text of this policy.

Other words and phrases that are not defined under this policy but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".

## SECTION I - EXCESS LIABILITY COVERAGE

1. **Insuring Agreement**

   a. We will pay on behalf of the "insured" the "ultimate net loss" in excess of the "controlling underlying insurance limit" because of "injury or damage" caused by a "loss event" to which this insurance applies, provided the applicable limits of "controlling underlying insurance", as shown in the Schedule Of Controlling Underlying Insurance, have been exhausted by payment of judgments, settlements and, if applicable, costs or expenses.

   b. The amount we will pay for the "ultimate net loss" is limited as described in Section **II** - Limits of Insurance.

   c. This insurance applies to "injury or damage" that is subject to a limit of applicable "controlling underlying insurance" that is specified in the Schedule Of Controlling Underlying Insurance. If any other limit, such as a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to "injury or damage" arising out of that exposure unless that limit is specified in the Schedule Of Controlling Underlying Insurance.

   d. If the "controlling underlying insurance" requires, for a particular claim, that the "injury or damage" occur during its policy period in order for that coverage to apply, then this insurance will only apply to that "injury or damage" if it occurs during the policy period of this policy. If the "controlling underlying insurance" requires that the "loss event" causing the particular "injury or damage" take place during its policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "loss event" causing that "injury or damage" takes place during the policy period of this policy.

   e. The insurance provided under this policy will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this policy will apply. However, the coverage provided under this policy will not be broader than that provided by the applicable "controlling underlying insurance".

   f. In the event that the Schedule Of Controlling Underlying Insurance identifies more than one policy of "controlling underlying insurance", the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "loss event" for which a claim is made or "suit" is brought will apply to the extent not contradicted by the provisions of this policy.

2. **Insuring Agreement – Defense**

   a. We will have no duty to investigate or defend any claim or "suit". We will have the right and be given the opportunity to associate with any "insured" or "controlling underlying insurer" in the investigation, settlement or defense of any claim or "suit" that may involve this insurance.

   b. At our discretion, we may investigate and settle any claim or "suit".

   c. If we exercise our rights as described in Paragraphs **2.a.** and **2.b.** above, we will pay, with respect to any claim we investigate or settle, or any "suit" against an "insured" we defend, the following costs or expenses:

**(1)** All expenses we incur, including but not limited to attorney fees;

**(2)** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds;

**(3)** All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work;

**(4)** All costs taxed against the "insured" in the "suit";

**(5)** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer; and

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the Each Loss Event Limit or Policy Aggregate Limit shown in the Declarations unless the policy of "controlling underlying insurance" specifies that its "controlling underlying insurance limit" is reduced by costs or expenses.

**d.** If we exercise our rights as described in Paragraphs **2.a.** and **2.b.** above, we are under no obligation to continue any investigation, settlement or associated defense when the "controlling underlying insurance limit" has been exhausted, or if on such exhaustion we continue any investigation, settlement or associated defense, when we have used up the applicable Each Loss Event Limit or Policy Aggregate Limit shown in the Declarations in the payment of judgments, settlements and, if applicable, costs or expenses.

**e.** When our limits of insurance have been exhausted, any defense provided by us under Paragraphs **2.a.** and/or **2.d.** will cease.

**3. Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this policy. In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this policy.

This insurance does not apply to:

**a. Auto**

Any loss, cost or expense payable under or resulting from any of the following auto coverages:

**(1)** First-party physical damage coverage;

**(2)** No-fault coverage;

**(3)** Personal injury protection or auto medical payments coverage; or

**(4)** Uninsured or underinsured motorists coverage.

**b. Employers Liability**

"Injury or damage" caused by a "loss event" covered under Employer's Liability "controlling underlying insurance" in any jurisdiction where such insurance is or is required to be unlimited.

**c. Medical Payments**

Medical payments coverage or expenses that are provided without regard to fault, whether or not provided by the applicable "controlling underlying insurance".

**d. Pollution**

**(1)** "Injury or damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants.

This exclusion only applies when this policy is excess to a policy issued by an insurer other than us.

This exclusion does not apply to the extent that the applicable "controlling underlying insurance" for the pollution liability risks described in Paragraphs **(1)** and **(2)** above exist or would have

existed but for the exhaustion of the limit of such "controlling underlying insurance" for "injury or damage".

**e. Workers' Compensation And Similar Laws**

Any obligation of any insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## SECTION II – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations, and the rules below fix the most we will pay regardless of the number of:

**a.** "Insureds";

**b.** Claims made or "suits" brought, or number of vehicles involved;

**c.** Persons or organizations making claims or bringing "suits"; or

**d.** Limits available under any "controlling underlying insurance".

**2.** The Limits of Insurance of this policy will apply as follows:

**a.** This insurance only applies in excess of the "controlling underlying insurance limit".

**b.** The Policy Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" for all "injury or damage" covered under this insurance.

However, this Policy Aggregate Limit only applies to "injury or damage" that is subject to an aggregate limit of insurance under the "controlling underlying insurance" applicable to the particular "loss event" for which a claim is made or "suit" is brought.

**c.** Subject to Paragraph **2.b.** above, the Each Loss Event Limit is the most we will pay for the sum of all "ultimate net loss" under this insurance because of all "injury or damage" arising out of any one "loss event".

**d.** If the Limits of Insurance of the "controlling underlying insurance" are reduced by costs or expenses by the terms of that policy, any payments for costs or expenses we make will reduce our applicable Limits of Insurance in the same manner.

**3.** If any "controlling underlying insurance" has a policy period that is different from the policy period of this policy then, for the purposes of this insurance, the "controlling underlying insurance limit" will only be reduced or exhausted by payments made for "injury or damage" covered under this insurance.

The Policy Aggregate Limit described in Paragraph **2.** above applies to the policy period shown in the Declarations. Any extension of the policy period will be deemed part of the policy period that is being extended and therefore subject to the Policy Aggregate Limit.

## SECTION III – CONDITIONS

The following conditions apply. In addition, the conditions applicable to any "controlling underlying insurance" are also applicable to the coverage provided under this insurance unless superseded by the following conditions.

**1. Appeals**

If the "controlling underlying insurer" or "insured" elects not to appeal a judgment in excess of the applicable "controlling underlying insurance limit", we may do so at our own expense. We will be liable for taxable costs, pre- and post-judgment interest and disbursements. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section **II** - Limits of Insurance.

**2. Bankruptcy**

**a. Bankruptcy Of Insured**

Bankruptcy or insolvency of the "insured" or of the "insured's" estate will not relieve us of our obligations under this policy.

**b. Bankruptcy Of Underlying Insurer**

Bankruptcy of the "controlling underlying insurer" will not relieve us of our obligations under this policy.

However, this insurance will not replace the "controlling underlying insurance" in the event of bankruptcy or insolvency of the "controlling underlying insurer". This insurance will apply as if the "controlling underlying insurance" were in full effect.

**3. Cancellation**

**a.** The first "Named Insured" shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**b.** We may cancel this policy by mailing or delivering to the first "Named Insured" written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the first "Named Insured's" last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, we will send the first "Named Insured" any premium refund due. If we cancel, the refund will be pro rata. If the first "Named Insured" cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

**4. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first "Named Insured" shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**5. Duties In The Event Of A Loss Event, Claim Or Suit**

a. You must see to it that we are notified in writing as soon as practicable of any "loss event", regardless of the amount, which may reasonably be expected to result in a claim under this policy. To the extent possible, notice should include:

(1) How, when and where the "loss event" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any "injury or damage" arising out of the "loss event".

b. If a claim is made or "suit" is brought against any "insured", you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us in writing as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved "insured" must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of "injury or damage" to which this insurance may also apply.

d. No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**6. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**7. Inspections And Surveys**

a. We have the right to:

(1) Make inspections and surveys at any time;

(2) Give you reports on the conditions we find; and

(3) Recommend changes.

b. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

(1) Are safe or healthful; or

(2) Comply with laws, regulations, codes or standards.

Paragraphs **a.** and **b.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

**8. Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured", but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured" and the claimant or the claimant's legal representative.

**9.  Other Insurance**

    **a.**  This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this policy.

    **b.**  When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

        **(1)**  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

        **(2)**  The total of all deductible and self-insured amounts under all that other insurance.

**10.  Premium Audit**

    **a.**  We will compute all premiums for this policy in accordance with our rules and rates.

    **b.**  If this policy is auditable, the premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first "Named Insured". The due date for audit premiums is the date shown as the due date on the bill.

    **c.**  The first "Named Insured" must keep records of the information we need for premium computation and send us copies at such times as we may request.

**11.  Representations Or Fraud**

By accepting this policy, you agree, represent and warrant that:

    **a.**  The statements in the Declarations are accurate and complete;

    **b.**  The statements and information contained in the application for insurance and any supplementary information are true and correct and that no facts have been suppressed or misstated;

    **c.**  This policy is being issued in full reliance upon the statements and representations made in the application and any supplementary information;

    **d.**  The application and any supplementary information are incorporated and made part of this policy by reference; and

    **e.**  This policy is void in any case of fraud and/or misrepresentation by you as it relates to this policy or any claim under this policy.

**12.  Separation Of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the first "Named Insured", this insurance applies:

    **a.**  As if each "Named Insured" were the only "Named Insured"; and

    **b.**  Separately to each "insured" against whom claim is made or "suit" is brought.

However, nothing in this condition renders this policy applicable to any "insured" where the policy is otherwise void due to fraud or misrepresentations made by that "insured" or any other "insured".

**13.  Transfer Of Rights Of Recovery Against Others To Us**

If the "insured" has rights to recover all or part of any payment we have made under this policy those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**14.  Transfer Of Rights And Duties Under This Policy**

The rights and duties of any "insured" under this policy may not be transferred without our written consent, except in the case of death of an individual named "insured".

If any "insured" dies, that "insured's" rights and duties will be transferred to that "insured's" legal representative, but only while acting within the scope of duties as that "insured's" legal representative. Until that "insured's" legal representative is appointed, anyone having proper temporary custody of that "insured's" property will have that "insured's" rights and duties but only with respect to that property.

**15.  No Duty To Notify If We Do Not Renew**

If we decide not to renew this policy, we are under no obligation to mail or deliver notice of the nonrenewal to any "insured" or others.

**16.  Loss Payable**

Liability under this policy does not apply to a given claim unless and until:

    **a.**  The "insured" or "insured's" "controlling underlying insurer" has become obligated to pay the "controlling underlying insurance limit"; and

b.  The obligation of the "insured" to pay the "ulti-mate net loss" in excess of the "controlling un-derlying insurance limit" has been determined by a final settlement or judgment or written agree-ment among the "insured", claimant, "controlling underlying insurer" (or a representative of one or more of these) and us.

**17. Maintenance Of Underlying Insurance**

You must maintain the "controlling underlying insur-ance" affording in total the coverage and limits as stated in the Schedule Of Controlling Underlying In-surance in full force and effect during the policy pe-riod shown in the Declarations of this policy, except for reduction of aggregate limits, where applicable, solely as a result of the payment of claims, settlement or judgments for "loss events" which:

a.  Take place during the policy period of this policy; and

b.  Are for "injury or damage", costs or expenses covered by this policy.

You must notify us in writing within thirty days if any company cancels, non-renews, replaces or other-wise terminates or changes any terms or conditions of any of the "controlling underlying insurance". You must notify us immediately of the exhaustion of any aggregate limits of the "controlling underlying insur-ance".

Your failure to comply with the foregoing will not in-validate this policy, but in the event of such failure we will be liable only to the extent that we would have been liable had you complied herewith.

**SECTION IV – DEFINITIONS**

The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following definitions apply.

1.  "Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Schedule Of Controlling Underlying Insurance that applies to the particular "loss event" for which a claim is made or "suit" is brought.

2.  "Controlling underlying insurance limit" means the sum of amounts applicable to any claim or "suit" from:

a.  "Controlling underlying insurance", whether such "controlling underlying insurance" is col-lectible or not;

b.  Any other insurance, whether primary, excess, contingent or on any other basis, except such in-surance as is specifically purchased to apply in excess of this policy's Limits of Insurance; and

c.  Any applicable self-insured retention or deducti-ble

3.  "Controlling underlying insurer" means any insurer who provides any policy or coverages of "controlling underlying insurance".

4.  "Injury or damage" means any injury or damage cov-ered by the applicable "controlling underlying insur-ance" arising from a "loss event".

5.  "Insured" means any person or organization qualify-ing as such under the "controlling underlying insur-ance".

6.  "Loss event" means an occurrence, offense, accident, act, or other event, to which the applicable "control-ling underlying insurance" applies.

7.  "Named Insured" means the entity(ies) or individ-ual(s) named in the Declarations.

8.  "Suit" means a civil proceeding in which damages because of a "loss event" to which this insurance ap-plies are alleged.  "Suit" includes:

a.  An arbitration proceeding in which such dam-ages are claimed and to which the "insured" must submit or does submit with our consent; or

b.  Any other alternative dispute resolution proceed-ing in which such damages are claimed and to which the "insured" submits with our consent or the "controlling underlying insurer's" consent.

9.  "Ultimate net loss" means the total sum, after reduc-tion for recoveries, or salvages collectible, that the "insured" becomes legally obligated to pay as dam-ages by reason of:

a.  Settlements, judgments, binding arbitration; or

b.  Other binding alternate dispute resolution pro-ceeding entered into with our consent.

"Ultimate net loss" includes costs and expenses if the "controlling underlying insurance" specifies that lim-its are reduced by costs or expenses.

Policy Number: GX000000241-03                                   **EX 50 46 01 15**

Effective Date: 12/21/2018

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

Any endorsement addressing acts of terrorism (however defined) in any "controlling underlying insurance" does not apply to this excess insurance.  The following provisions addressing acts of terrorism apply with respect to this excess insurance.

**A. Applicability Of The Provisions Of This Endorsement**

  **1.** **The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs.  But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.**

    **a.** **The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part; or**

    **b.** **A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:**

      **(1)** **Increase our statutory percentage deductible under the Program for terrorism losses.  (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or**

      **(2)** **Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or**

      **(3)** **Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.**

  **2.** **If the provisions of this endorsement become applicable, such provisions:**

    **a.** **Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims-made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and**

    **b.** **Remain applicable unless we notify you of changes in these provisions, in response to federal law.**

  **3.** **If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.**

**B.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks:

"Terrorism" means activities against persons, organizations or property of any nature:

  **1.** That involve the following or preparation for the following:

    **a.** Use or threat of force or violence; or

    **b.**   Commission or threat of a dangerous act; or

    **c.**   Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

  **2.**  When one or both of the following applies:

    **a.**   The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **b.**   It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**C.**  The following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for "injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

  **1.**  The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

  **2.**  Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

  **3.**  The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

  **4.**  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

  **5.**  The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

  **6.**  Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.**   Physical injury that involves a substantial risk of death; or

    **b.**   Protracted and obvious physical disfigurement; or

    **c.**   Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph **C.5.** or **C.6.** are exceeded.

With respect to this exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to this exclusion, coverage does not apply to "injury or damage" that is otherwise excluded under this Coverage Part.

Policy Number: GX000000241-03 **EX 51 04 08 18**

Effective Date: 12/21/2018

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# SERVICE OF SUIT
# (NOT APPLICABLE IN DELAWARE
# AND NEW JERSEY)

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other Officer specified for that purpose in the Statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, **suit** or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the below named as the person to whom the said Officer is authorized to mail such process or a true copy thereof.

It is further agreed that service of process in such **suit** may be made upon Janet Shemanske, or her nominee of the Company at 7233 East Butherus Drive, Scottsdale, Arizona 85260, and that in any **suit** instituted against the Company upon this policy, it will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.  Nothing herein shall constitute a selection or designation of forum, or a waiver of any of the Company's rights to select a forum or court, including any of the federal courts of the United States.  This includes any right to commence an action in or remove or transfer an action to the United States District Court or any other court of competent jurisdiction, as permitted by law.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, **suit** or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

# EXHIBIT "C"

NO. DC-20-2488-C

Electronically Filed
3/1/2021 12:00 AM
Penny Clarkston, Smith County District Clerk
Reviewed By: Penny Clarkston

| | |
|---|---|
| ROBERT BROWN | IN THE DISTRICT COURT |
| *Plaintiff* | |
| vs. | |
| | SMITH COUNTY, TEXAS |
| FUSION PACIFIC, INC.; | |
| HARD COVER HOT TUBS, LLC; and | |
| THE PARK OF EAST TEXAS, INC. dba THE EAST | 241st JUDICIAL DISTRICT |
| TEXAS STATE FAIR; and SOFT FUN LLC | |
| *Defendants* | |

## PLAINTIFF'S SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, ROBERT BROWN ("Plaintiff" or "Mr. Brown) complaining of and about Defendants, FUSION PACIFIC, INC ("Defendant" or "Fusion Pacific"), HARD COVER HOT TUBS, LLC ("Defendant" or "Hard Cover Hot Tubs"), THE PARK OF EAST TEXAS, INC. dba THE EAST TEXAS STATE FAIR ("Defendant" or "East Texas State Fair") and SOFT FUNDS LLC ("Defendant" or "Soft Fund") (collectively "Defendants") and for the cause of action would show unto the Court the following:

### A.

### DISCOVERY CONTROL PLAN LEVEL

1. Plaintiffs intend that discovery be conducted under Discovery Level 3.

### B.

### PARTIES

2. At the time of the incident made the basis of this claim at the time of filing this claim, Plaintiff Robert Brown is a resident of Spicewood, Burnet County, Texas.

1

3. Defendant Fusion Pacific, Inc., is a foreign corporation doing business in Texas which has been served.

4. Defendant Hard Cover Hot Tubs, LLC., is a Texas corporation and has been served and answered.

5. Defendant The Park of East Texas, Inc. doing business as The East Texas State Fair has been served and answered.

6. Defendant Soft Fund LLC is a foreign corporation doing business in Texas and may be served by serving its registered agent, United States Corporation Agents Inc., at its registered address, 1591 Savannah Highway, Suite 201, Charleston, South Carolina 29407.

C.

## JURISDICTION

7. The Court has jurisdiction over this lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements. Plaintiff pleads damages pursuant to Tex.R.Civ.P.47(c)(5).

D.

## VENUE

8. Venue for this suit is proper under the Tex. Civ. Prac. & Rem. Code section 15.002 because all or a substantial part of the acts or omissions giving rise to the claim occurred in Smith County, Texas.

E.

## FACTUAL BACKGROUND

9. On or about September 27, 28, 29 and 30, 2019, Robert Brown was a business invitee and entered upon the premises of The East Texas State Fair in Smith County, Texas.   During

2

the time that Mr. Brown was upon Defendant's property Plaintiff utilized was at and near the Fusion Pacific and Hard Cover Hot Tub spa and hot tub displays and that the facility offered relevant hereto. Additionally, there was another hot tub displays in the convention center owned and operated by SCM Relaxation, a division of Soft Fun LLC. At the time of this visit the premises and/or its condition was owned, controlled, managed and maintained by Defendant The East Texas State Fair.

10. During the normal course of use, water from the facility's water systems was heated and the water therein was caused to steam, vaporize, and become aerosolized. Upon information and belief, the *Legionella* bacteria that were present in the water system were inhaled and ingested by the Plaintiff.

11. On September 30, 2019, Robert Brown began to experience symptoms consistent with Legionnaires' disease. He experienced these symptoms, including respiratory symptoms, cough, lethargy, body aches, and fever, well within the incubation period of Legionnaires' disease after his exposure at The East Texas State Fair. He was taken to the emergency room at Baylor Scott & White Spine and Joint Hospital in Tyler, and diagnosed with pneumonia on October 1, 2019. Mr. Brown's symptoms continued to worsen and he went to the Emergency Room at Ascension Seton Highland Lakes Hospital in Burnet, Texas where he was admitted and remained until October 10, 2019 and was treated for pneumonia like symptoms. In late October 2019, a friend of Mr. Brown's wife texted Mr. Brown's wife about a Legionnaires outbreak at The East Texas State Fair. On November 2, 2019, Mr. Brown contacted NET Health (Northeast Texas Public Health) and discussed his exposure. The NET Health listed the symptoms of Legionnaires disease to Mr. Brown and he recognized having every symptom. The NET Health representative recommended that

3

Mr. Brown be tested for the presence of *Legionella* bacteria. Mr. Brown made an appointment with Dr. Alan E. Leifeste of Kingsland. TX 78639 who confirmed Legionnaire's disease through a urine test.

12. *Legionella* bacteria, which are the cause of Legionnaires' disease. have an incubation period of 2 to 10 days within the human body. Mr. Brown's presence at The East Texas State Fair is squarely within the incubation period of the bacteria and their use of the water system. hot tubs and spas is consistent with the likely cause of the disease.

13. Upon information and belief, Robert Brown acquired Legionnaires' disease at the property premises of The East Texas State Fair in Smith County. Texas at 2112 W. Front Street.. Tyler TX, 75702 from a Fusion Pacific and Hard Cover Hot Tub spa and hot tub display. In addition. Mr. Brown was likely exposed to the Legionella bacteria through the hot tub display owned and operated by SCM Relaxation. a division of Soft Fun. LLC. Legionnaires' disease was the direct and proximate cause of Robert Brown becoming seriously ill, requiring significant and continuing medical treatment.

F.

## COUNT 1 – NEGLIGENCE

14. Plaintiff incorporates by reference herby any and all prior paragraphs hereto.

15. As owner and operator of the premises, Defendant The East Texas State Fair owed a duty to exercise due care for its guests by ensuring that the premises and the amenities therein were reasonably safe for use by members of the public.

16. Moreover. Defendants were responsible for the inspection. repair, and maintenance of the hot tubs and spas display at the premises. It was their duty as owner and operator of the

4

premises and owner and operator of the hot tub and spa display to exercise due care in the maintenance of the water systems so as not to subject guests to unreasonable risks of harm.

17. The Defendants breached their duty to the Mr. Brown in the following respects when it knew or should have known that its acts and omissions created an unreasonable risk of harm to its invitees:

(a.) In failing to adequately inspect the premises and its systems for dangerous conditions including, but not limited to, the presence of *Legionella* bacteria;

(b.) In failing to adequately inspect, monitor, and maintain the water systems, hot tubs and spas when such inspections, monitoring, and maintenance would have discovered the presence of *Legionella*.

(c.) In failing to properly train and supervise its employees or those to whom it had entrusted the care and maintenance of the water systems, and in particular in failing to train or instruct them to recognize the presence of *Legionella* bacteria and the risks such bacteria present;

(d.) In failing to adopt, enact, employ, and enforce proper and adequate maintenance programs, precautions, procedures, measures, and plans for the detection of *Legionella* in its systems:

(e.) In failing to warn invitees of the presence of *Legionella*;

(f.) In failing to perform and furnish services, including testing and proper maintenance of the water systems, showers, hot tubs, spas, saunas and pools, in conformity with the standard of care then prevailing in the hospitality industry when such services would have disclosed the presence of *Legionella*;

5

(g.) In failing to have in force an inspection program of the water systems. hot tubs and spas when such an inspection program would have disclosed the presence of *Legionella*;

(h.) In breaching its duty to provide a reasonably safe environment for its invitees; and

(i.) In failing to adequately treat its water systems. hot tubs. and spas with chlorine or other biocidal chemicals.

As a proximate cause of Defendants' breach of its duty to Plaintiff has sustained the serious injuries alleged above. Plaintiff therefore demands judgment against Defendants. jointly and severally. in an appropriate amount and request that Plaintiff be awarded compensatory damages. as well as pre- and post-judgment interest, and such other relief as the law may allow.

## Count II: NEGLIGENCE *PER SE*

18. Plaintiff incorporates by reference herby any and all prior paragraphs hereto and further allege as follows:

19. At all times material hereto, Defendants were subject to the Texas Administrative Code. Title 25. Subchapter L – Standards for Public Pools and Spas.

    (a) Specifically, Rule §265.197. "Disinfectant Equipment and Chemical Feeders for Post – 10/01/99 and Pre – 10/01/99 Pools and Spas" in paragraphs (3). (4) and (5) of part (a) states the following:

        i.    Disinfection equipment shall be selected and installed so that continuous and effective disinfection can be achieved under all conditions.  (See paragraph 3 of part (a) Texas Administrative   Code.

6

Title 25, Subchapter L – Standards for Public Pools and Spas, Rule §265.197)

ii.     The pool or spa water shall be continuously disinfected by a disinfecting agent whose residual can be measured by simple and accurate field tests. (See paragraph 4 of part (a) Texas Administrative Code, Title 25, Subchapter L – Standards for Public Pools and Spas, Rule §265.197)

iii.    Personnel responsible for the operation of the disinfection agent and other potentially hazardous chemicals shall be properly trained. (See paragraph 5 of part (a) Texas Administrative Code, Title 25, Subchapter L – Standards for Public Pools and Spas, Rule §265.197)

20. Defendants owed a legal duty to guests and visitors at The East Texas State Fair and the Fusion Pacific and Hard Cover Hot Tub and SCM Relaxation displays, and specifically to the Plaintiff, to keep the water systems reasonably safe for the activities for which it was regularly used and reasonably foreseen to be used. This duty extended to the water in the hot tubs and spas and displays. Defendants breached their duty.

21. As a proximate cause of Defendants' breach of their duty to Plaintiff, Plaintiff has sustained the serious injuries alleged above. Plaintiff therefore demands judgment against Defendants, jointly and severally, in an appropriate amount and requests that Plaintiff be awarded compensatory damages, as well as pre- and post-judgment interest, and such other relief as the law may allow.

7

## Count III: PUNITIVE DAMAGES

22. Plaintiff incorporates by reference herby any and all prior paragraphs hereto and further allege as follows:

23. Punitive damages and all other exemplary damages for most causes of action are governed by Chapter 41 of the Texas Civil Practice and Remedies Code. This code states that exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from fraud, malice, or gross negligence.

24. The Plaintiff is entitled to an award of punitive damages because of the Defendants' wanton and reckless disregard and deliberate indifference of the safety of the The East Texas State Fair and their water systems for the invitees visiting there. Such acts of wanton disregard, conscious disregard, and deliberate indifference include but are not limited to the following:

    (a.) Failure to adequately test the water systems for *Legionella* prior to Plaintiffs' visit;

    (b.) Failure to adequately maintain the water systems in such a way as to prevent the propagation of *Legionella*;

    (c.) Failure to maintain documentation regarding maintenance scheduling, maintenance plans, water temperatures, free chlorine readings, construction changes, renovations, hot/cool water systems, plumbing, inspection reports, and any *Legionella* or general bacteria prevention plan;

8

        (d.)    Failure to provide notice to guests and invitees of the presence of *Legionella* at the property and risk of exposure;

        (e.)    Failure to adhere to strict remediation protocol in order to   prevent further colonization of *Legionella* bacteria.

25. Wherefore. for the foregoing reasons, Plaintiff demands judgment against Defendants, jointly and severally. for punitive damages.

## G.

## DAMAGES

26. Robert Brown has suffered the following damages:

        (a.) Plaintiff suffered reasonable and necessary costs of medical care and treatment, including doctors, hospitals, nurses. medications. and other services and supplies in the past;

        (b.)Plaintiff will further suffer reasonable and necessary costs of medical care and treatment. including doctors, hospitals, nurses, medications, and other services and supplies in the futures;

        (c.) Plaintiff suffered physical impairment in the past;

        (d.)Plaintiff will suffer physical impairment in the future:

        (e.) Plaintiff suffered mental anguish in the past; and

        (f.) Plaintiff will suffer mental anguish in the future.

      By reason of the above. Plaintiff has been damaged in an amount within the jurisdictional limits of this court. Plaintiff will be forced to endure suffering, mental anguish. physical impairment/disability, and all other recoverable damages at law for an undetermined

length of time in the future and probably for the rest of his life. Plaintiff would show that his total damages are set out exceeds the minimum jurisdictional limits of this Court.

Plaintiff brings this action and claims compensatory damages against all Defendants. Plaintiff also claims punitive damages against all Defendants.

## H. PREJUDGMENT

## INTEREST

27. Plaintiffs assert claims for prejudgment and post-judgment interest on all applicable elements of damages.

## I.

## CONDITIONS PRECEDENT

28. All conditions precedent to recovery have been performed or met regarding these claims, including requisite notice of claim.

## J.

## INCORPORATION OF ALLEGATIONS

29. All allegations made herein are incorporated into every other titled allegation.

## K.

## PLAINTIFFS' REQUEST FOR JURY TRIAL

30. Plaintiffs hereby request a jury trial in this civil action and tender the appropriate fee to the clerk of the court in this case. The Plaintiffs are entitled to a trial by jury in the above cause pursuant to the TEX. CONST. art. I, § 15, TEX.R.CIV.P. 216 and U.S. CONST.   amend. VII. The Plaintiffs are entitled to, and hereby request, a jury of six jurors, as well as a valid number of alternative jurors. (See TEX.GOV'T CODE ANN. § 62.020).

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein as required by law; that upon final hearing hereon Plaintiffs have judgement of and from Defendants, jointly and severally, in the amount of damages proved; for all costs of Court, for pre-judgement interest at the highest rate according to law; for post-judgement interest at the highest rate according to law; and for such other and further relief, special or general, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

/S/Jamshyd (Jim) M. Zadeh
JAMSHYD (JIM) M. ZADEH
State Bar No. 2223900
Law Office of Jim Zadeh, P.C.
1555 Rio Grande Avenue
Fort Worth, TX 76102
817 335-5100
817 335-3974 *Facsimile*

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel in accordance with the Texas Rules of Civil Procedure on this the March 1, 2021 via e-service.

/s/ Jim Zadeh

Jamshyd (Jim) M. Zadeh

11

# EXHIBIT "D"

Electronically Filed
6/21/2021 11:43 AM
Penny Clarkston, Smith County District Clerk
Reviewed By: Gina McClung

CAUSE NO. _____  <span>21-1407-C</span>

| | | |
|---|---|---|
| **ROBERT MYER and** | § | **IN THE DISTRICT COURT OF** |
| **ERIKA MYER,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **SMITH COUNTY, TEXAS** |
| | § | |
| **FUSION PACIFIC, INC, HARD COVER** | § | |
| **HOT TUBS, LLC, SOFT FUN, LLC, and** | § | |
| **THE PARK OF EAST TEXAS, INC. d/b/a** | § | |
| **THE EAST TEXAS STATE FAIR,** | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

      COMES NOW Plaintiffs, Robert Myer and Erika Myer, complaining of and against Defendants, Fusion Pacific, Inc., Hard Cover Hot Tubs, LLC, Soft Fun, LLC, and The Park of East Texas, Inc. d/b/a The East Texas State Fair (hereinafter collectively referred to as "Defendants"), and files this, Plaintiffs' Original Petition, and would show the Court as follows:

### A.    DISCOVERY CONTROL PLAN

1.     Pursuant to TEX. R. CIV. PRO. 190.1, Plaintiffs intend to conduct discovery in this case under Level 3, as proscribed by TEX. R. CIV. P. 190.4.

### B.    PARTIES

2.     Plaintiffs, Robert and Erika Myer, are both individuals and were both residing in Chandler, Henderson County, Texas during the time of the events made the basis of this suit. Robert and Erika are married.

3.     Defendant, Fusion Pacific, Inc. (hereinafter "Fusion") is a foreign corporation doing business in Texas and may be served with citation through its registered agent, Howard L. Haigh, at 17129 Koala Road, Adelanto, California, 92301, or wherever it may be found.

4. Defendant, Hard Cover Hot Tubs, LLC (hereinafter "Hard Cover") is a Texas limited liability company operating in Texas and may be served with citation through its registered agent, Erik Delgado, at 35 Nafta Circle, Suite 105, New Braunfels, Texas, 78132 or at 128 Bass Lane, New Braunfels, Texas, 78130, or wherever it may be found.

5. Defendant, Soft Fun, LLC (hereinafter "Soft Fun") is a foreign limited liability company doing business in Texas and may be served with citation through its registered agent, United States Corporation Agents Inc., at 1591 Savannah Highway, Suite 201, Charleston, South Carolina, 29407, or wherever it may be found.

6. Defendant, The Park of East Texas, Inc. d/b/a The East Texas State Fair (hereinafter "The Fair") is a Texas domestic nonprofit corporation and may be served with citation through its registered agent, John Sykes, at 2112 West Front Street, Tyler, Texas 75702, or wherever it may be found.

## C.    JURISDICTION AND VENUE

7. Per TEX. R. CIV. P. 47(c)(5), Plaintiffs hereby state that they are seeking monetary relief of over $1,000,000, excluding costs, prejudgment interest, exemplary damages, and attorney fees.

8. Jurisdiction is proper in this Court because Plaintiffs are entitled to damages in excess of the minimum jurisdiction of this Court. Specifically, Plaintiffs seek monetary relief over $1,000,000.

9. Pursuant to TEX. CIV. PRAC. & REM § 15.002, venue for this lawsuit is proper because all or a substantial part of the acts and omissions giving rise to the claim occurred in Smith County, Texas.

### D.   MISNOMER, ALTER-EGO, ASSUMED NAME

10.   In the event any parties are misnamed or not included herein, such event was a "misnomer" or such parties are or were "alter-egos" of parties named herein. Plaintiffs bring this action against Defendants, Fusion Pacific, Inc., Hard Cover Hot Tubs, LLC, Soft Fun, LLC, and The Park of East Texas, Inc. d/b/a The East Texas State Fair, and any of their assumed names, and rely upon TEX. R. CIV. PRO. 28 in order to properly identify the Defendants

### E.   FACTUAL BACKGROUND

11.   On or about Wednesday, September 25, 2019, Plaintiffs, Robert Myer, and his wife, Erika, were attendees at the 2019 East Texas State Fair ("the Fair") in Tyler, Texas. During their visit, they proceed inside the Harvey Hall Convention Center, which was on the Fair premises.

12.   The Fair premises, including the Harvey Hall Convention Center, were owned, controlled, managed, and/or maintained by Defendant, The Fair.

13.   Inside the Harvey Hall Convention Center were at least seven functioning hot tubs and spas are displayed, manufactured, operated, and/or maintained by Defendants, Fusion, Hard Cover, and Soft Fun.

14.   These functioning hot tubs and spa displays were operating in the Harvey Hall Convention Center with the express consent and permission of Defendant, The Fair.

15.   These functioning hot tubs and spa displays were provided water from the Fair's water supply in the Harvey Hall Convention Center.

16.   During their visit inside the Harvey Hall Convention Center, Plaintiffs walked by and

stopped in the vicinity of Defendants Fusion, Hard Cover, and Soft Fun's functioning hot tubs and spa displays.

17. On or about October 4, 2019, Mr. Myer begins to feel sick. He is admitted to the UT Health Tyler Hospital in Tyler, Texas on October 10, 2019. He is treated for what was supposedly pneumonia and discharged from the hospital on October 13, 2019.

18. On October 24, 2019, Mr. Myer was contacted by Northeast Texas Public Health District ("NET Health") and told that he had actually contracted Legionnaires Disease.

19. Subsequently, Mr. Myer underwent additional medical treatment for Legionnaires Disease and continues to suffer from the effects of that disease.

20. According to the U. S. Department of Health and Human Services, Centers for Disease Control and Prevention ("CDC"), Legionnaires Disease is a very severe type of pneumonia that is caused by inhalation of *Legionella* bacteria from a water source. *Legionella* is found in warm water, particularly improperly maintained water systems, air conditioning units, air conditioning cooling units, stagnant water, spas, pools, and potable water sources that are not adequately cleaned and disinfected. A person becomes infected with *Legionella* when they breathe in steam or mist or aerosolized water from a contaminated water system.

21. According to the CDC, the incubation period for the *Legionella* bacteria to become symptomatic in a person is from two to fourteen days after exposure to the water source. Plaintiff, Robert Myer, began to feel sick about nine days after his visit to the Fair.

22. During his visit to the Fair and the Harvey Hall Convention Center, Plaintiff, Robert Myer, was exposed to and breathed in, inhaled, or consumed *Legionella*-contaminated water, causing him to contract Legionnaires Disease.

23.   The source of the *Legionella*-contaminated water was Defendants Fusion, Hard Cover, and Soft Fun's hot tubs and spa displays, water supply, and plumbing systems at the Fair and the Harvey Hall Convention Center.

24.   Plaintiff, Robert Myer, was not the only person to contract Legionnaires Disease at the Fair. An outbreak of respiratory illness in several other persons resulting from exposure to *Legionella* bacteria at the Fair between September 25, 2019 and October 4, 2019 was confirmed by the CDC and Northeast Texas Public Health District ("NET Health"). It was the prevailing opinion that the exposures were due to aerosolizing of water from hot tubs and spas which were on and/or part of exhibits inside the Harvey Hall Convention Center.

25.   The subsequent NET Health and CDC investigation confirmed that *Legionella* bacteria was present in the Harvey Hall Convention Center water supply.

26.   Legionnaires Disease is not a communicable disease and cannot be transmitted person-to-person.

27.   The *Legionella* bacteria is not a pollutant.

28.   The water supplied at the Fair was a good or product intended for bodily consumption.

29.   The water supplied at the Fair was a good or product intended for human ingestion.

30.   The *Legionella* bacteria which Plaintiff, Robert Myer, was exposed to was on, or was contained in, the Fair's water.

### F.      CAUSE OF ACTION: COUNT I - NEGLIGENCE

31.   Plaintiffs incorporate and reference hereby any and all prior paragraphs hereto and further allege as follows:

32.   At all times relevant hereto, Defendants acted through their agents, servants, employees

and/or ostensible agents, and those individuals whom it held out to the public and to the Plaintiffs to be agents, servants, employees and/or ostensible agents.

33. Defendants were responsible for the inspection, repair and maintenance of the hot tubs and spa displays, water supply and plumbing system at the Fair.

34. Defendants owed Plaintiffs a duty to exercise due care in the inspection, repair and maintenance of the hot tubs and spa displays, water supply and plumbing system at the Fair.

35. Plaintiffs were invitees of the Fair and the Defendants as defined under Texas law.

36. Because of Plaintiffs status as invitees, Defendants owed Plaintiffs a duty to warn or make safe any dangerous conditions that they knew about or could have discovered with a reasonable inspection.

37. The water supply and plumbing system at the Fair which Plaintiff, Robert Myer, was exposed to was an unsafe and dangerous condition because it was contaminated with the *Legionella* bacteria.

38. The hot tubs and spa displays at the Fair which Plaintiff, Robert Myer, was exposed to was an unsafe and dangerous condition because they contained *Legionella*-contaminated water.

39. Defendants had actual notice of the unsafe and dangerous condition of the water and the hot tubs and spa displays at the Fair.

40. Alternatively, the unsafe and dangerous condition of the water and the hot tubs and spa displays at the Fair existed long enough to make it Defendants duty to have discovered it.

41. Alternatively, Defendants created the unsafe and dangerous condition of the water and the hot tubs and spa displays at the Fair through their own actions and omission. As such,

Defendants are charged with and imputed with knowledge of the unsafe and dangerous condition.

42. Defendants' duty is intended to protect persons, including Plaintiffs, from this type of harm arising in this manner.

43. Defendants breached their duty to Plaintiffs, resulting in Plaintiff, Robert Myer, contracting Legionnaires Disease.

44. The Defendants actions and omissions were a substantial factor in bringing about the harm to Plaintiffs.

45. Defendants' actions and omissions in allowing *Legionella* bacteria to thrive in the water and the hot tubs and spa displays at the Fair were a cause-in-fact of Plaintiff, Robert Myer, contracting Legionnaires Disease.

46. Plaintiffs aver that they were not guilty of any act or omission which caused or contributed to their damages herein, but rather their resulting damages were proximately caused by the negligence of Defendants, acting through Defendants agents, servants, employees and/or ostensible agents, including, but not limited to, the following particulars:

   a. Failing to properly maintain the Fair's water supply and hot tubs and spa displays which allowed *Legionella* bacteria to develop and flourish;

   b. Failing to clean and disinfect the Fair's water supply and hot tubs and spa displays which allowed *Legionella* bacteria to develop and flourish;

   c. Failing to test, or have tested, the Fair's water supply and hot tubs and spa displays which allowed *Legionella* bacteria to develop and flourish;

   d. Failing to inspect, or have inspected, the Fair's water supply and hot tubs and spa displays which allowed *Legionella* bacteria to develop and flourish;

   e. Failing to detect or discover that the *Legionella* bacteria had developed and flourished in the Fair's water supply and hot tubs and spa displays;

f.   Failing to warn Fair invitees, including Plaintiffs, of the danger of the Fair's water supply and hot tubs and spa displays which contained the *Legionella* bacteria;

g.   Failing to adopt, enact, employ and enforce a water management plan or water management program to reduce *legionella* growth and spread in the Fair's water supply and hot tubs and spa displays;

h.   Failing to follow recognized federal, state and county guidelines and regulations to reduce the risk of *Legionella* exposure from the Fair's water supply and hot tubs and spa displays so as to prevent cases and outbreaks of Legionnaires Disease;

i.   Failing to follow ANSI/ASHRAE Standard 188, *Legionnellosis: Risk Management for Building Water Systems*; and

j.   Failing to follow ASHRAE Guideline 12-2000, *Minimizing the Risk of Legionellosis Associated With Building Water Systems.*

## G.   CAUSE OF ACTION: COUNT II - NEGLIGENCE PER SE

47.   Plaintiffs incorporate and reference hereby any and all prior paragraphs hereto and further allege as follows:

48.   At all times pertinent hereto, Defendants were subject to the TEX. ADMIN. CODE, Title 25, Subchapter L - Standards for Public Pools and Spas.

49.   Pursuant to the TEX. ADMIN. CODE, Defendants owed a legal duty to guests and visitors at the Fair, including Plaintiffs, to keep the water supply reasonable safe for the activities for which it was regularly used and reasonably foreseen to be used. This duty extended to the Defendants hot tubs and spa displays.

50.   Defendants breached their duty to the Plaintiffs under the TEX. ADMIN. CODE.

## H.   CAUSE OF ACTION: COUNT III – GROSS NEGLIGENCE

51.   Plaintiffs incorporate and reference hereby any and all prior paragraphs hereto and further allege as follows:

52.   Punitive damages and all other exemplary damages for most causes of action are governed by Tex. Civ. Prac. & Rem. Chapter 41. This code provides that exemplary damage may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recover of exemplary damages results from fraud, malice, or gross negligence.

53.   Plaintiffs are entitled to an award of punitive damages because of the Defendants wanton and reckless disregard and deliberate indifference to the safety of the invitees to the Fair, including Plaintiffs. Objectively, Defendants' actions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, Defendants had actual, subjective awareness of the risk but proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiffs.

54.   Plaintiffs' injuries resulted from Defendants' gross negligence, which, under Tex. Civ. Prac. & Rem. Chapter 41, entitles Plaintiffs to exemplary damages as authorized by Tex. Civ. Prac. & Rem. § 41.003(c).

### I.   VICARIOUS LIABILITY – *RESPONDEAT SUPERIOR* – FUSION

55.   The acts and omissions of Defendant Fusion's employees were performed while in their employment of Defendant Fusion, and were within the scope of that employment or within the authority delegated to the employees.

### J.   VICARIOUS LIABILITY – *RESPONDEAT SUPERIOR* – HARD COVER

56.   The acts and omissions of Defendant Hard Cover's employees were performed while in their employment of Defendant Hard Cover, and were within the scope of that employment or within the authority delegated to the employees.

### K. VICARIOUS LIABILITY – *RESPONDEAT SUPERIOR* – SOFT FUN

57. The acts and omissions of Defendant Soft Fun's employees were performed while in their employment of Defendant Soft Fun, and were within the scope of that employment or within the authority delegated to the employees.

### L. VICARIOUS LIABILITY – *RESPONDEAT SUPERIOR* – THE FAIR

58. The acts and omissions of Defendant The Fair's employees were performed while in their employment of Defendant The Fair, and were within the scope of that employment or within the authority delegated to the employees.

### M. ACTUAL DAMAGES

59. As the proximate result of the aforementioned acts and/or omissions of the Defendants, Plaintiff, Robert Myer, has sustained, or is certain to sustain, the following damages:

 a. Loss of earning capacity sustained in the past;

 b. Loss of earning capacity that, in reasonable probability, Robert will sustain in the future;

 c. Medical care expenses incurred in the past;

 d. Medical care expenses that, in reasonable probability, Robert will incur in the future;

 e. Loss of earnings sustained in the past;

 f. Loss of earnings that, in reasonable probability, Robert will incur in the future;

 g. Physical pain sustained in the past;

 h. Physical pain that, in reasonable probability, Robert will sustain in the future;

 i. Mental anguish sustained in the past;

 j. Mental anguish that, in reasonable probability, Robert will sustain in the future

  k.  Disfigurement sustained in the past;

  l.  Disfigurement that, in reasonable probability, Robert will sustain in the future;

  m.  Physical impairment sustained in the past;

  n.  Physical impairment that, in reasonable probability, Robert will sustain in the future; and

  o.  Loss of enjoyment of life.

60. At all times pertinent hereto, Plaintiff, Erika Myer, was the lawful spouse of Plaintiff, Robert Myer, and is entitled to recover damages for loss of consortium for the injuries to her husband caused by the Defendants.

61. Plaintiffs request and are entitled to trial by jury on all issues against Defendants, and tender the appropriate fee with this Petition. Plaintiffs respectfully request that a court reporter attend all sessions of Court in connection with this case, and that the court reporter take full notes of the voir dire, all testimony offered, together with any and all objections, arguments, and presentations of counsel, and rulings and remarks of the Court.

## N.  DAMAGES CONSIDERED SEPARATELY

62. Plaintiffs respectfully asserts their request that Plaintiffs be allowed to have the elements of damages considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate for the injuries, losses and damages incurred in the past and to be incurred in the future, by Plaintiffs, and that each element of each Plaintiffs' damages be considered separately and individually, segregating the past and future losses, so that the amount of pre-judgment interest due to Plaintiffs may be computed.

### O.   INITIAL DISCLOSURES

63.   Pursuant to Rule 194.2 of the TEX. R. CIV. PRO., Defendants are required to disclose within 30 days after the filing of their answer, all of the information or materials described in TEX. R. CIV. PRO. 194.2(b).

### P.   INTERESTS AND COSTS

64.   Plaintiffs seek the recovery of pre-judgment interest and post-judgment interest as authorized by law. Plaintiffs also seek recovery for all costs of court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that Defendants be cited to appear and answer and that on final hearing Plaintiffs have judgment against Defendants for an amount within the jurisdictional limits of this Court, together with pre-judgment and post-judgment interest as provided by law, attorney fees, costs of court, exemplary damages, and for such other and further relief, at law or in equity to which Plaintiffs are justly entitled.

Respectfully submitted,

**THE CARLSON LAW FIRM, P.C.**
11606 N. IH-35
Austin, Texas 78753
Telephone: (512) 346-5688
Facsimile:   (512) 719-4362

By:   /s/ L. Todd Kelly
**L. Todd Kelly**
SBN: 24035049
Tkellyefile@carlsonattorneys.com
**Nicholas P. Merz**
SBN: 24107863
NMerz@carlsonattorneys.com

### ATTORNEYS FOR PLAINTIFFS

# EXHIBIT "E"

Electronically Filed
7/29/2021 5:12 PM
Penny Clarkston, Smith County District Clerk
Reviewed By: Gina McClung

No. 21-1783-B

| | |
|---|---|
| **SUSAN GUTIERREZ Individually, and as Representative Of the Heirs and Estate of Ruben Gutierrez** <br> *Plaintiff* <br><br> vs. <br><br> **FUSION PACIFIC, INC.;** <br> **HARD COVER HOT TUBS, LLC; and** <br> **THE PARK OF EAST TEXAS, INC. dba THE EAST TEXAS STATE FAIR; and SCM RELAXATION SPAS, a division of SOFT FUN LLC** | **IN THE DISTRICT COURT** <br><br><br> **SMITH COUNTY, TEXAS** <br><br> 114th **JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Plaintiff, SUSAN GUTIERREZ INDIVIDUALLY, AND AS REPRESENTATIVE OF THE HEIRS AND ESTATE OF RUBEN GUTIERREZ ("Plaintiff" or "Ms. Gutierrez) complaining of and about Defendants, FUSION PACIFIC, INC ("Defendant" or "Fusion Pacific"), HARD COVER HOT TUBS, LLC ("Defendant" or "Hard Cover Hot Tubs"), THE PARK OF EAST TEXAS, INC. dba THE EAST TEXAS STATE FAIR ("Defendant" or "East Texas State Fair") and SCM RELAXATION SPA, a division of SOFT FUN LLC ("Defendant" or "Soft Fun") (collectively "Defendants") and for the cause of action would show unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1. Plaintiffs intend that discovery be conducted under Discovery Level 3.

### PARTIES

2. At the time of the incident made the basis of this claim and at the time of filing this claim, Plaintiff Susan Gutierrez individually and as representative of the heirs and estate of Ruben Gutierrez was

Plaintiff's Original Petition | 1

and is a resident of Smith County, Texas.

3.  Defendant Hard Cover Hot Tubs, LLC., is a Texas corporation and may be served with citation through its registered agent, Erik Delgado, 35 Nafta Circle, Suite 105, New Braunfels, TX 78132-5345.

4.  Defendant The Park of East Texas, Inc. doing business as The East Texas State Fair may be served with citation through its registered agent John Sykes, 2112 West Front, Tyler, Texas 75702.

5.  Defendant SCM Relaxation Spas, a division Soft Fun LLC, is a foreign corporation doing business in Texas and may be served by serving its registered agent, United States Corporation Agents Inc., at its registered address, 1591 Savannah Highway, Suite 201, Charleston, South Carolina 29407.

6.  Defendant Fusion Pacific, Inc., is a foreign corporation doing business in Texas and may be served with citation though its registered agent, Howard L. Haigh, 17129 Koala Road, Adelanto, CA 92301.

## JURISDICTION

7.  The Court has jurisdiction over this lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements. Plaintiff pleads damages pursuant to Tex.R.Civ.P.47(c)(4).

## VENUE

8.  Venue for this suit is proper under the Tex. Civ. Prac. & Rem. Code section 15.002 because all or a substantial part of the acts or omissions giving rise to the claim occurred in Smith County, Texas.

## FACTUAL BACKGROUND

9.  On or about September 20-28, 2019 Raul Gutierrez was a business invitee and entered upon the premises of The East Texas State Fair in Smith County, Texas. During the time that Mr. Gutierrez was upon Defendant's property Plaintiff utilized was at and near the Fusion Pacific and Hard Cover Hot Tub spa and hot tub displays and that the facility offered relevant hereto. Additionally, there

Plaintiff's Original Petition | 2

was another hot tub displays in the convention center owned and operated by SCM Relaxation, a division of Soft Fun LLC. At the time of this visit the premises and/or its condition was owned, controlled, managed and maintained by Defendant The East Texas State Fair.

10. During the normal course of use, water from the facility's water systems was heated and the water therein was caused to steam, vaporize, and become aerosolized. Upon information and belief, the *Legionella* bacteria that were present in the water system were inhaled and ingested by the Plaintiff.

11. On September 29, 2019, Ruben Gutierrez began to experience symptoms consistent with Legionnaires' disease. He experienced these symptoms, including respiratory symptoms, cough, lethargy, body aches, and fever, well within the incubation period of Legionnaires' disease after his exposure at The East Texas State Fair. On September 29, 2019 Mr. Gutierrez developed a fever, aches and chills and did not attend the East Texas State Fair in Tyler, Texas. On September 30, 2019 Mr. Gutierrez went to see Dr. Andrea Ellis at Christus Trinity Mother Francis in Tyler, Texas. On October 1, 2019 Dr. Ellis called Mr. Gutierrez and told him not to take the antibiotics he had been prescribed and told him to go an Emergency Room since his urinalysis showed a positive result for Legionnaires' disease. Mrs. Gutierrez drove Mr. Gutierrez to the Emergency Room at Christus Trinity Mother Francis Hospital, Mr. Gutierrez remained over night in the pulmonary ICU and began to experience cognitive issues. On October 2, 2019 Mr. Gutierrez experienced hallucinations that were related to kidney failure and remained in the hospital until October 17, 2019 when he was discharged. At the time of his discharge Mr. Gutierrez still was experiencing symptoms related to Legionnaires' disease. On October 29, 2019 Mr. Gutierrez was re-admitted to the hospital with severe symptoms, due to his symptoms Mr. Gutierrez's colon was removed due to inflammation related to Clostridium difficile. On November 1, 2019 Mr. Gutierrez was intubated and went into a coma. On November 8, 2019 Mr. Gutierrez became non-responsive and

died later that afternoon. Mrs. Gutierrez was contacted by NEThealth who informed her that Mr. Gutierrez had been exposed to Legionella bacteria.

12. *Legionella* bacteria, which are the cause of Legionnaires' disease, have an incubation period of 2 to 10 days within the human body. Mr. Gutierrez's presence at The East Texas State Fair is squarely within the incubation period of the bacteria and their use of the water system, hot tubs and spas is consistent with the likely cause of the disease.

13. Upon information and belief, Ruben Gutierrez acquired Legionnaires' disease at the property premises of The East Texas State Fair in Smith County, Texas at 2112 W. Front Street,, Tyler TX, 75702 from a Fusion Pacific and Hard Cover Hot Tub spa and hot tub display. In addition, Mr. Gutierrez was likely exposed to the Legionella bacteria through the hot tub display owned and operated by SCM Relaxation, a division of Soft Fun, LLC. Legionnaires' disease was the direct and proximate cause of Ruben Gutierrez becoming seriously ill and ultimately dying.

### COUNT 1 – NEGLIGENCE

14. Plaintiff incorporates by reference herby any and all prior paragraphs hereto.

15. As owner and operator of the premises, Defendant The East Texas State Fair owed a duty to exercise due care for its guests by ensuring that the premises and the amenities therein were reasonably safe for use by members of the public.

16. Moreover, Defendants were responsible for the inspection, repair, and maintenance of the hot tubs and spas display at the premises. It was their duty as owner and operator of the premises and owner and operator of the hot tub and spa display to exercise due care in the maintenance of the water systems so as not to subject guests to unreasonable risks of harm.

17. The Defendants breached their duty to the Mr. Gutierrez in the following respects when it knew

or should have known that its acts and omissions created an unreasonable risk of harm to its invitees:

(a.) In failing to adequately inspect the premises and its systems for dangerous conditions including, but not limited to, the presence of *Legionella* bacteria;

(b.) In failing to adequately inspect, monitor, and maintain the water systems, hot tubs and spas when such inspections, monitoring, and maintenance would have discovered the presence of *Legionella*.

(c.) In failing to properly train and supervise its employees or those to whom it had entrusted the care and maintenance of the water systems, and in particular in failing to train or instruct them to recognize the presence of *Legionella* bacteria and the risks such bacteria present;

(d.) In failing to adopt, enact, employ, and enforce proper and adequate maintenance programs, precautions, procedures, measures, and plans for the detection of *Legionella* in its systems;

(e.) In failing to warn invitees of the presence of *Legionella*;

(f.) In failing to perform and furnish services, including testing and proper maintenance of the water systems, showers, hot tubs, spas, saunas and pools, in conformity with the standard of care then prevailing in the hospitality industry when such services would have disclosed the presence of *Legionella*;

(g.) In failing to have in force an inspection program of the water systems, hot tubs and spas when such an inspection program would have disclosed the presence of *Legionella*;

(h.) In breaching its duty to provide a reasonably safe environment for its invitees; and

(i.) In failing to adequately treat its water systems, hot tubs, and spas with chlorine or other biocidal chemicals.

As a proximate cause of Defendants' breach of its duty to Plaintiff has sustained the serious

injuries alleged above. Plaintiff therefore demands judgment against Defendants, jointly and severally, in an appropriate amount and request that Plaintiff be awarded compensatory damages, as well as pre- and post-judgment interest, and such other relief as the law may allow.

### COUNT II: NEGLIGENCE *PER SE*

18. Plaintiff incorporates by reference herby any and all prior paragraphs hereto and further allege as follows:

(a) At all times material hereto. Defendants were subject to the Texas Administrative Code, Title 25, Subchapter L – Standards for Public Pools and Spas. Specifically, Rule §265.197. "Disinfectant Equipment and Chemical Feeders for Post – 10/01/99 and Pre – 10/01/99 Pools and Spas" in paragraphs (3), (4) and (5) of part (a) states the following:

i.   Disinfection equipment shall be selected and installed so that continuous and effective disinfection can be achieved under all conditions.  (See paragraph 3 of part (a) Texas Administrative   Code, Title 25, Subchapter L – Standards for Public Pools and Spas, Rule § 265.197)

ii.   The pool or spa water shall be continuously disinfected by a disinfecting agent whose residual can be measured by simple and accurate field tests. (See paragraph 4 of part (a) Texas Administrative Code, Title 25, Subchapter L – Standards for Public Pools and Spas, Rule §265.197)

iii.   Personnel responsible for the operation of the disinfection agent and other potentially hazardous chemicals shall be properly trained. (See paragraph 5 of part (a) Texas Administrative Code, Title 25, Subchapter L – Standards for Public Pools and Spas, Rule §265.197)

19. Defendants owed a legal duty to guests and visitors at The East Texas State Fair and the Fusion Pacific and Hard Cover Hot Tub and SCM Relaxation displays, and specifically to the Plaintiff, to keep the water systems reasonably safe for the activities for which it was regularly used and

reasonably foreseen to be used. This duty extended to the water in the hot tubs and spas and displays. Defendants breached their duty.

20. As a proximate cause of Defendants' breach of their duty to Plaintiff, Plaintiff has sustained the serious injuries alleged above. Plaintiff therefore demands judgment against Defendants, jointly and severally, in an appropriate amount and requests that Plaintiff be awarded compensatory damages, as well as pre- and post-judgment interest, and such other relief as the law may allow.

## COUNT III: PUNITIVE DAMAGES

21. Plaintiff incorporates by reference herby any and all prior paragraphs hereto and further allege as follows:

22. Punitive damages and all other exemplary damages for most causes of action are governed by Chapter 41 of the Texas Civil Practice and Remedies Code. This code states that exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from fraud, malice, or gross negligence.

23. The Plaintiff is entitled to an award of punitive damages because of the Defendants' wanton and reckless disregard and deliberate indifference of the safety of the The East Texas State Fair and their water systems for the invitees visiting there. Such acts of wanton disregard, conscious disregard, and deliberate indifference include but are not limited to the following:

(a.) Failure to adequately test the water systems for *Legionella* prior to Plaintiffs' visit;

(b.) Failure to adequately maintain the water systems in such a way as to prevent the propagation of *Legionella*;

(c.) Failure to maintain documentation regarding maintenance scheduling, maintenance plans, water temperatures, free chlorine readings, construction changes, renovations, hot/cool water

Plaintiff's Original Petition | 7

systems, plumbing, inspection reports, and any *Legionella* or general bacteria prevention plan;

(d.) Failure to provide notice to guests and invitees of the presence of *Legionella* at the property and risk of exposure;

(e.) Failure to adhere to strict remediation protocol in order to prevent further colonization of *Legionella* bacteria.

24. Wherefore, for the foregoing reasons, Plaintiff demands judgment against Defendants, jointly and severally, for punitive damages.

## COUNT IV: SURVIVAL CLAIM

25. Plaintiff hereby re-asserts and re-alleges the allegations in paragraphs 1 through 24 above

26. Plaintiff is the personal representative of the heirs and of the estate of Decedent and is an heir of Decedent. Before Decedent died, he had a cause of action under the Survival Statute. Tex. Civ. Prac. & Rem. Code 71.021. Plaintiff incorporates each of every cause of action in this Petition as if fully set forth herein. Decedent would have been able to bring all such causes of action if Decedent were still alive.

27. Defendants' actions as fully set forth previously herein, caused Decedent's death and Plaintiff seeks to recover and damages the Decedent suffered as a result of Defendants' actions.

## COUNT V: WRONGFUL DEATH ACTION

28. Plaintiff hereby re-asserts and re-alleges the allegations in paragraphs 1 through 27 above.

29. Plaintiff is a statutory beneficiary of Decedent. Defendants' wrongful acts as set forth above caused the death of Decedent. Defendants are liable for damages arising from Decedent's injuries and death as the injuries and death were caused by Defendants or their agent's or servant's wrongful acts, neglect, carelessness, unskillfulness or default. Decedent would have been entitled to bring an action for the injuries sustained if he had lived. Plaintiff has suffered actual injury within the jurisdictional limits of this Court and Plaintiff seeks damages.

Plaintiff's Original Petition | 8

30. Plaintiff represents the heirs of the estate of the Decedent. Before dying, Decedent had a cause of action for negligence, negligence per-se and, gross negligence, which could have been brought against Defendants by Decedent.

31. Decedent's injuries and death resulted from Defendants' negligence and, alternatively, assault and battery which is set forth at length herein. Defendants proximately caused the injuries of Decedent. Defendants' negligence and, alternatively, gross negligence proximately caused Decedent's injuries and death and damages in an amount in excess of the minimum jurisdictional limits of the Court.

## DAMAGES

32. Susan Gutierrez, individually, and as representative of the heirs and Estate of Ruben Gutierrez has suffered the following damages:

1. Medical, hospital and health care expenses of Decedent.

2. Physical pain and mental anguish and suffering of Plaintiff and Decedent.

3. Funeral expenses.

4. Pecuniary losses, including but not limited to loss of earning capacity, services, advice, counsel, are, maintenance, support and reasonable contributions of a pecuniary value.

5. Loss of companionship and society.

6. Loss of inheritance.

7. Exemplary damages.

8. All other damages allowed by law.

33. By reason of the above, Plaintiff has been damaged in an amount within the jurisdictional limits of this court. Plaintiff brings this action and claims compensatory damages against all Defendants. Plaintiff also claims punitive damages against all Defendants.

Plaintiff's Original Petition | 9

### PREJUDGMENT INTEREST

34. Plaintiffs assert claims for prejudgment and post-judgment interest on all applicable elements of damages.

### CONDITIONS PRECEDENT

35. All conditions precedent to recovery have been performed or met regarding these claims, including requisite notice of claim.

### INCORPORATION OF ALLEGATIONS

36. All allegations made herein are incorporated into every other titled allegation.

### PLAINTIFF'S REQUEST FOR JURY TRIAL

37. Plaintiff hereby requests a jury trial in this civil action and tender the appropriate fee to the clerk of the court in this case. The Plaintiffs are entitled to a trial by jury in the above cause pursuant to the TEX. CONST. art. I, § 15, TEX.R.CIV.P. 216 and U.S. CONST. amend. VII. Plaintiff is entitled to, and hereby request, a jury of six jurors, as well as a valid number of alternative jurors. (See TEX.GOV'T CODE ANN. § 62.020).

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein as required by law; that upon final hearing hereon Plaintiffs have judgement of and from Defendants, jointly and severally, in the amount of damages proved; for all costs of Court, for pre-judgement interest at the highest rate according to law; for post-judgement interest at the highest rate according to law; and for such other and further relief, special or general, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

_/S/Jamshyd (Jim) M. Zadeh_
JAMSHYD (JIM) M. ZADEH
State Bar No. 2223900
ELAN CABRERO
State Bar No. 24096772
NICK PEELE
State Bar No. 24097078
Law Office of Jim Zadeh, P.C.
1555 Rio Grande Avenue
Fort Worth, TX 76102
817 335-5100
817 335-3974 *Facsimile*

*Attorneys for Plaintiff*